No. 13744

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

THOMAS P. McGUINN,

                Defendant and Appellant,

        -vs-

THE STATE OF MONTANA,

                Plaintiff and Respondent.

Appeal from:    District Court of the Second Judicial District,
                Honorable Arnold Olsen, Judge presiding.

Counsel of Record:

        For Appellant:

            Leonard J. Haxby argued, Butte, Montana
            Daniel R. Sweeney argued, Butte, Montana

        For Respondent:

            Hon. Mike Greely, Attorney General, Helena, Montana
            Denny Moreen argued, Assistant Attorney General,
             Helena, Montana
            John G. Winston, County Attorney, Butte, Montana
            Craig G. Phillips argued, Deputy County Attorney,
             Butte, Montana

                            Submitted:   March 7, 1978

                            Decided: JUN 2  1978

Filed:   JUN    1978

_Thomas J. Kearney_
                        Clerk

Mr. Justice John C. Harrison delivered the Opinion of the Court:

This is an appeal by defendant Thomas P. McGuinn from the final judgment entered on a jury verdict of guilty of deliberate homicide in the District Court, Silver Bow County.

The body of Mrs. LaRae Alley was found on May 30, 1976, at approximately 2:00 p.m. in an area located approximately 10 miles south of Butte, Montana. The cause of death was four bullet wounds in the head. Time of death was estimated to be between 5 a.m. of the morning of May 30 and 1 p.m. that afternoon.

Defendant was first questioned concerning the murder on or about May 30, 1976. No charges resulted from this questioning. Later, on June 2, 1976, defendant was arrested and placed in custody by the Silver Bow County sheriff's office on another charge. At that time the clothing of the defendant was taken from him and sent to the FBI laboratory in Washington, D.C. for analysis in connection with the murder of LaRae Alley.

On August 5, 1976, defendant was charged by Information with the crime of deliberate homicide. Trial commenced on February 15, 1977. During the trial the state offered direct and circumstantial evidence tending to prove defendant committed the crime. Contrarily, defendant maintained his innocence throughout the trial, testifying on his own behalf and insisting he was not in the area at the time the crime was committed.

On February 23, 1977, defendant was found guilty of the crime of deliberate homicide by a jury verdict. From this verdict and subsequent judgment, defendant appeals.

Defendant presents numerous issues for review by this Court. The determinative issue is whether there is sufficient

substantial, credible evidence to support the jury verdict? The balance of the claimed errors is alleged to be cumulative and taken together amounts to reversible error.

The standard used by this Court when reviewing the verdict of a jury is set forth in State v. Merseal, (1975), 167 Mont. 412, 415, 538 P.2d 1366:

> "This Court remains evermindful of one fundamental rule -- that questions of fact must be determined solely by the jury, and that given a certain legal minimum of evidence, this Court on review will not substitute its judgment for that of the jury. * * *
>
> " * * *
>
> "On appeal we examine the evidence to determine whether the verdict is supported by substantial evidence. In so doing, we view the evidence in the light most favorable to the State. * * *" 167 Mont. 415.

The state offered evidence to show defendant had the opportunity to murder Mrs. Alley. The time element connecting defendant with the crime is: On May 30, Mrs. Alley left her home at approximately 8:25 to 8:30 a.m. to deliver gasoline to her husband on Continental Drive. On that same morning, defendant left the D & M Bar, located in Butte, at approximately 7:30 a.m. His vehicle was seen on the road leading to the scene of the crime at approximately 8:00 a.m. Defendant's vehicle was again seen on that road driving toward Butte from the scene of the crime at a high rate of speed between 8:45 and 8:50 a.m.

A detective investigating the crime testified to making several trips between the victim's house and the murder scene. He found it took from 10-12 minutes to cover the route, if one traveled within the speed limits.

In addition to the time element, a pair of sunglasses found at the crime scene, after the initial discovery of the body,

- 3 -

was circumstantially linked to defendant. Testimony was also given that a man matching defendant's description purchased a new pair of sunglasses on the evening of May 30.

Next, the state produced evidence to demonstrate defendant had the means to murder Mrs. Alley. Defendant consented to a search of his home which produced an unusual .38 short S & W box of bullets and a suspected .38 Smith & Wesson weapon. Three Federal Bureau of Investigation laboratory experts gave testimony:

Ira Holland, a special agent for the FBI, testified concerning the neutron activation analysis performed on the bullets removed from the victim's head. From this analysis the agent stated the bullets were similar enough in elemental composition to have come from the same box of cartridges as those taken in the consent search at defendant's home. This finding was confirmed by the defense expert.

The bullets recovered from the victim were identified as .38 S & W caliber bullets. The bullets taken at defendant's home were also .38 S & W. Ballistics indicated the bullets were fired from a barrel with five grooves plus a right-hand twist. Testimony was given that the .38 S & W bullet is an unusual .38 short cartridge intended for use in revolvers.

James B. Bollenbach, an FBI agent, testified the .38 S & W short cartridge when compared to modern ammunition is of relatively low power. This evidence corresponded with the pathologist's testimony that the bullets removed from the victim were of a low energy type, not often seen in modern times. The pathologist, basing his observation on 30 years of experience, was of the opinion that modern ammunition is sufficiently powerful that the skull is massively fractured and in most instances the bullet

- 4 -

penetrates to the opposite side of the skull or exits. In this case the bullet only penetrated the brain for a distance of approximately one inch after passing through the skull.

Defendant's .38 fit the general description of the .38 S & W but it was not identified as the murder weapon.

James Hilverda, another FBI special agent, testified that fibers on the clothing of the victim were microscopically similar to fibers contained in a sweater belonging to defendant. Those fibers could have come from the defendant's sweater, but not to the exclusion of all the other garments.

Finally, impeaching evidence was given by defendant while testifying in his own behalf. At trial, defendant stated he went to a Mr. Roger's residence on Continental Drive. The state produced a prior statement taken by Sheriff Hagel where defendant denied making any trips on Continental Drive on May 30.

Defendant claimed he was in a bar at 8:00 a.m. on the morning of May 30. Two witnesses testified to seeing defendant traveling on Continental Drive around 8 a.m.

Defendant submitted to a swab test to determine the last time he fired a gun. During the test, defendant gave four separate stores concerning the last time he fired a gun. The final story was "two days ago", which was the day of the homicide.

John Whelan testified defendant requested him to get defendant a substitute gun while both were in the Silver Bow County jail. Defendant denied this testimony.

Finally, defendant testified he barely knew the victim and had never socialized with her. John Whelan testified defendant told him he knew the victim.

Carol Ann Gilmore testified she saw defendant and the victim, arm-in-arm, going into a restaurant approximately a year

before the shooting. She was positive of her identification of both persons.

Defendant was placed near the scene of the crime. Defendant was shown to have the means to commit the crime. Finally, defendant cast doubt on his own plea of innocence by being impeached on topics closely related to his activities surrounding the crime.

Defendant's remaining issues will be reviewed in accord with his theory of cumulative error. In urging the doctrine of cumulative error, defendant raises 16 specifications of alleged errors claiming that the aggregate of these errors, when taken as a whole, constitutes prejudicial error and hence are reversible.

This Court is not obligated to refute all of these alleged errors where the errors are bald assertions, absent any specific argument or authority, or are allegations which can be classified as nitpicking and void of definable prejudice. We will, however, briefly answer these contentions in light of the Court's ruling on the doctrine of cumulative error in State v. Meidinger, (1972), 160 Mont. 310, 321, 502 P.2d 58, where the Court said:

> " * * * We cannot accept this contention. Defendant in interpreting this doctrine points out 33 separate specifications of alleged errors and claims that the aggregate of these errors when taken as a whole constitutes prejudicial error. This doctrine, if it in fact exists, presumes that all 33 allegations are errors."
> (Emphasis supplied.)

Here, defendant at the outset contends the Information was not based on sufficient probable cause. Section 95-1301, R.C.M. 1947, provides in pertinent part:

> "* * *If it appears there is probable cause to believe that an offense has been committed by the defendant the judge shall grant leave to file the information * * *."

The court may rely on the presence of probabilities.

> "* * * a mere probability is sufficient for probable cause, a prima facie showing not being necessary. Also affidavits of probable cause are subject to much less rigorous standards than the admissibility of evidence." State v. Miner, (1976), 169 Mont. 260, 264, 546 P.2d 252.

We have reviewed the application for leave to file the Information. The county attorney presented a large array of facts. Probable cause to believe that an offense was committed by the defendant appears from these facts.

Defendant's second contention is that a total of 17 exhibits were improperly admitted into evidence. Defendant has apparently raised as error every exhibit to which he objected in some manner during trial. Eight of the exhibits were objected to on the grounds of lack of proper foundation.

> " * * * A determination of whether a foundation has been properly laid in order to introduce exhibits into evidence rests with the lower court and such a determination will not be overturned unless there is a clear abuse of discretion * * *." State v. Olsen, (1968), 152 Mont. 1, 10, 445 P.2d 926.

No abuse of discretion is present in this case. If an exhibit has been shown to be connected with the crime and identified as such, it is sufficient. State v. Wilroy, (1967), 150 Mont. 255, 259, 434 P.2d 138. The items in question were shown to be connected with the crime.

Eight other exhibits were objected to on the grounds of relevancy. Evidence is considered relevant if it naturally and logically tends to establish a fact in issue. State v. Sanders, (1971), 158 Mont. 113, 117,118, 489 P.2d 371. Exhibits containing bullets from the crime and photographs of the crime scene have been found to be admissible. State v. Allison, (1948), 122 Mont. 120, 133, 199 P.2d 279; State v. McKenzie, (1976),

_____Mont._____, 557 P.2d 1023, 1037, 33 St.Rep. 1043 (Remanded by the United States Supreme Court for further consideration, see: State v. McKenzie, _____Mont._____, _____P.2d _____, 35 St.Rep. 759). All of the questioned items were sufficiently connected to the crime.

Defendant raises as error the admission into evidence of Exhibit 7A, a pistol introduced for illustrative purposes only. The county attorney upon presenting this pistol stated:

"Q. I'm going to show you a weapon and have it marked. (Whereupon, State's proposed Exhibit 7A is marked for identification.)

"Q. First of all, I'm going to tell you this was not the weapon that did the shooting. * * *"

After some discussion and an objection by defendant that Exhibit 7A was not the gun that shot the victim and therefore it was totally immaterial and irrelevant to the case, the trial court apparently admitted the exhibit into evidence without a motion from either party.

On appeal defendant now alleges since no attempt was made to introduce the exhibit, the erroneous admittance of the exhibit into evidence misled the jury into believing the defendant was the owner of the murder weapon.

The county attorney clearly stated that the exhibit was to be used for illustrative purposes only. While neither party moved to admit this exhibit into evidence, they did not object when the trial court stated "Exhibit 7A may be admitted into evidence."

In addition to lacking a specific objection for admitting this exhibit without a motion, we see no substantial prejudice. Both the state and defendant clearly stated the exhibit was not the murder weapon.

Defendant next raises an additional series of error concerning the introduction of hearsay testimony. Many of the allegations of error deal with the introduction of statements made by defendant and admitted by the trial court as a verbal act exception to the hearsay rule.

The law on admissions against interest is well established. Section 93-401-27, R.C.M. 1947, dealing with facts which may be proven at trial, provides in pertinent part:

> "2. The act, declaration or omission of a party, as evidence against such party."

An admission has been defined as any voluntary statement by an accused relating to some particular fact or circumstance which indicates a consciousness of guilt and tends to connect the accused with the crime charged. State v. Allison, (1948), 122 Mont. 120, 144, 199 P.2d 279.

The state questioned the sheriff regarding statements made by the defendant's son. Defendant objected on the grounds that any statements made by the son concerning the sunglasses would be hearsay. The county attorney responded to this objection by stating:

> "It's the same verbal act that we're talking about now. We're not asking Mr. Hagel to tell the statement was true, but that the statement was made * * *."

These statements would have been hearsay had they been offered to prove the truth of the matter stated. However, as the county attorney stated, they were not offered for that purpose but rather to show how the investigation focused on the defendant as a suspect.

Going further through the transcript we note defendant's son's subsequent testimony. The son stated he had not identified the sunglasses but rather said: "Those look like my dad's sunglasses."

- 9 -

Accordingly, we find no substantial prejudicial effect on the defendant. As stated by this Court in State v. Romero, (1973), 161 Mont. 333, 341, 505 P.2d 1207, under section 95-2425, R.C.M. 1947:

"Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded. * * *"

Additional error is alleged resulting from the comments and remarks made by the prosecutor. Defendant contends the comments were inflammatory and prejudicial. The lack of significance of this alleged error is particularly found in defendant's failure to take any corrective measure during trial. State v. Caryl, (1975), 168 Mont. 414, 432, 543 P.2d 389.

Defendant had the burden to show that the remarks and comments affected his substantial right. In the absence of such showing there can be no prejudice. State v. Meidinger, supra.

A like contention of error is made by defendant concerning alleged comments on the evidence made by the District Court. For similar reasons, no merit is found in this argument. The references cited from the transcript are nitpicky and fail to qualify as comments on either the weight or interpretation of the evidence. During trial defendant did not object to any of the statements of the court now alleged to be prejudicial, nor did he take any other corrective action. State v. Jensen, (1969), 153 Mont. 233, 236, 455 P.2d 631.

Finally, defendant contends the trial court gave 7 improper jury instructions and failed to submit 14 proper instructions on behalf of the defendant.

Briefly, 2 of the 7 specifications of error concerning improper instructions were not objected to at the time the instructions were settled. These instructions, Court's Instructions #7 and #16, cannot now be challenged on appeal for

the first time. State v. Meidinger, supra. A third alleged improper instruction, Court's Instruction #3, was objected to on the grounds that a shorter more concise instruction was available. Court's Instruction #3 is recommended and found in the Montana Jury Instruction Guide. Court's Instruction #18 was objected to by defendant on the grounds of being repetitious of a prior court instruction. A reading of the instructions reveals the instruction objected to defined circumstantial evidence, whereas the prior court instruction differentiated direct and circumstantial evidence and explained how the jury should consider circumstantial evidence. We find no merit in defendant's objection.

The remainder of defendant's alleged improper jury instructions fail to establish any reversible error and we deem them not worthy of discussion.

Of the 14 instructions proposed by defendant, but not given, 11 were rejected on the grounds of being repetitious of given instructions. A fair reading of all of the jury instructions as a whole demonstrates they are sufficient and properly instructed the jury on the law governing this case. Those jury instructions rejected as repetitious were not an abuse of discretion by the court.

The remaining 3 proposed instructions also fail to provide grounds for reversal. Defendant attempted to offer an instruction concerning the defense of alibi. This instruction was properly rejected as defendant's case was not founded upon an alibi defense. No notice of such a defense was given as required by section 95-1803(3), R.C.M. 1947. No claim was made by defendant in keeping with the defense of alibi.

Defendant also proposed 2 instructions providing a legal definition for the words "could" and "similar". The District Court refused these instructions stating:

"* * * They [the jury] heard the testimony
of the similarities and it's up to them to
determine the similarities and its not within
the province of this court to say what similarity
is or is not."

We find no error on the part of the trial court in refusing these instructions.

This Court has carefully reviewed the issues for review presented by the defendant. We find sufficient substantial evidence, if believed by the jury. We find no abuse of judicial discretion or reversible error.

The judgment of the trial court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices.

_____
Hon. M. James Sorte, District
Judge, sitting with the Court.

- 12 -