No. 81-15

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

LARRY WURTZ,

Defendant and Appellant.

Appeal from: District Court of the Eleventh Judicial District,
In and for the County of Flathead.
Honorable Robert Sykes, Judge presiding.

Counsel of Record:

For Appellant:

Hash, Jellison, O'Brien and Bartlett, Kalispell,
Montana
James C. Bartlett argued, Kalispell, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Chris D. Tweeten argued, Assistant Attorney General,
Helena, Montana
Ted O. Lympus, County Attorney, Kalispell, Montana

Submitted: June 19, 1981

Decided: November 6, 1981

Filed: **NOV 6 - 1981**

*Thomas J. Kearney*

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Larry Wurtz was found guilty of intimidation after being tried by jury in the Eleventh Judicial District, Flathead County, and was sentenced to ten years imprisonment. He appeals his conviction. We affirm.

On April 10, 1980, K.S. was walking home from her job as a legal secretary in Kalispell, Montana. While she was crossing the street, she noticed a blue car that was stopped at a stop sign. K.S. proceeded one half block down the street. As she crossed an alley, the blue car pulled into the alley and stopped behind her. The driver's window was open, and the driver asked K.S., "Do you want to fuck?" K.S. looked at the driver and then walked on. She later identified Larry Wurtz as the driver of the car.

As K.S. walked down the street, the car kept pace and the driver continued to make obscene comments. When K.S. reached the next alley, the car pulled into the alley and blocked her path. The defendant said, "I want to rape you" or words to that effect or "I am going to rape you." He also said, "Do you want to suck my cock?" K.S. walked behind the car and memorized the license number. The driver placed his car in reverse as if to run over K.S. and she ran one-half block to a neighboring house. The door was locked so K.S. hid between two houses. The car proceeded down the street and out of sight. K.S. then ran to her house and called the police. She observed the car driving around the neighborhood while she was speaking to the police over the telephone.

At trial, the State presented the testimony of K.S. and that of two other witnesses, Addison Clark and S.B. Clark was a Kalispell police officer who participated in the investigation of the case against the defendant. He testified, over objection,

-2-

that a license check had been run on the numbers that K.S. had observed on the blue car, and that the car was registered to the defendant. He also testified that he showed K.S. a photo array containing the defendant's photo together with six others depicting persons meeting the defendant's general description. K.S. identified the defendant's photo as being that of the driver of the car.

S.B., a high school student, testified to a prior incident involving the defendant. She stated that on June 23, 1979, at approximately 4:30 to 5:00 p.m., she was walking toward Flathead High School when Larry Wurtz drove by in the opposite direction and stuck his tongue out at her in a suggestive manner. When S.B. arrived at the high school parking lot, the defendant drove up and asked S.B. to have sexual intercourse with him. He also asked her if she wanted to see his penis. When S.B. rebuffed the defendant's advances, he jumped out of the car and grabbed her. Wurtz unsnapped S.B.'s pants and was beginning to unzip his when S.B. broke away from him and ran to safety in the high school. While Wurtz was restraining S.B., he continued to make obscene comments. S.B. was able to identify Wurtz, and he pleaded guilty to sexual assault on September 7, 1979.

Wurtz was found guilty of intimidation and raises five issues in his appeal:

1. Whether the charge of intimidation under section 45-5-203(1)(c), MCA, is unconstitutional.

2. Whether the charge of intimidation should have been dismissed as a matter of law for the reason that it was not supported by the evidence.

3. Whether the court properly instructed the jury.

4. Whether the court properly admitted other crime evidence through the testimony of S.B.

-3-

5. Whether the court properly admitted the testimony of policeman Addison Clark.

Issue No. 1: The appellant was convicted under section 45-5-203(1)(c), MCA, which states that:

> "A person commits the offense of intimidation when, with the purpose to cause another to perform or omit the performance of any act, he communicates to another a threat to perform without lawful authority any of the following acts: . . .
>
> "(c) commit any criminal offense;. . ."

Appellant contends that the above section is overbroad on its face and therefore an infringement of various rights guaranteed by the First Amendment to the United States Constitution. The allegation of overbreadth rests upon the restriction that the section places upon communication of threats to commit "insubstantial evil."

Appellant relies solely upon Landry v. Daley (N.D. Ill. 1968), 280 F.Supp. 938, rev'd on other grounds sub nom. Boyle v. Landry (1971), 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696. That case involved section 12-6(a)(3), Illinois Criminal Code (1961), which is virtually identical to section 45-5-203(1)(c), MCA.

Landry v. Daley was a declaratory judgment action brought by black citizens and ACT, a civil rights group. ACT engaged in picketing, demonstrations, rallies and other activities to accomplish its goals. The plaintiffs sought injunctions against the enforcement of Illinois statutes and Chicago ordinances. They alleged that the laws were being used to deprive them of the free exercise of their First Amendment rights. The three-judge federal court declared the "any criminal offense" section of the Illinois statute to be unconstitutional.

-4-

"The provision is not vague. It is, however, overbroad since it prohibits threats of insubstantial evil. The commission of criminal offenses against persons or property is a substantial evil, and the state may legitimately proscribe the making of threats to commit such offenses. The commission of offenses against public order only, however, is not such a substantial evil that the state may prohibit the threat of it. Sub-paragraph (a)(3) proscribes threats to violate any penal statute. It therefore makes criminal threats such as the following: (1) [sic] threats by dissentient grounds to engage in disorderly conduct, threats by residents of a high-crime neighborhood to carry concealed weapons for their own protection, and threats by mothers to block a dangerous state highway to demonstrate the need for increased safety measures. Indeed, the phrase 'commit any criminal offense' is so broad as to include threats to commit misdemeanors punishable by fine only. These evils are not so substantial that the state's interest in prohibiting the threat of them outweighs the public interest in giving legitimate political discussion a wide berth." Landry v. Daley, 280 F.Supp. at 964.

The decision in Landry v. Daley was reversed in Boyle v. Landry (1971), 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696. The Supreme Court found that the injunction was issued prematurely because:

"It is obvious that the allegations of the complaint in this case fall far short of showing any irreparable injury from threats or actual prosecutions under the intimidation statute or from any other conduct by state or city officials. Not a single one of the citizens who brought this action had ever been prosecuted, charged, or even arrested under the particular intimidation statute which the court below held unconstitutional . . . [t]he normal course of state criminal prosecutions cannot be disrupted or blocked on the basis of charges which in the last analysis amount to nothing more than speculation about the future." Boyle v. Landry, 401 U.S. at 80-81, 91 S.Ct. at 760, 27 L.Ed.2d at 699-700.

Appellant argues that the reversal of Landry v. Daley by Boyle v. Landry does not weaken the reasoning of the three-judge federal court. We find, however, that statements of the United States Supreme Court subsequent to the Landry v. Daley decision lead us to conclude that section 45-5-203(1)(c), MCA, is not overbroad.

-5-

Broadrick v. Oklahoma (1973), 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830, involved an Oklahoma statute which limited the political participation of certain state employees. Three state employees who had been charged under the statute challenged it as vague and overbroad. The Supreme Court affirmed the federal district court holding that the statute was constitutional, and said:

> "Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court.. . . [An] exception has been carved out in the area of the First Amendment.

> "It has long been recognized that the First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society . . . Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression. . ." Broadrick, 413 U.S. at 610, 611-612, 93 S.Ct. at 2915-2916, 37 L.Ed.2d at 839-840.

> "It remains a 'matter of no little difficulty' to determine when a law may properly be held void on its face and when 'such summary action' is inappropriate. Coates v. City of Cincinnati, 402 U.S. 611, 617, 91 S.Ct. 1686, 1689, 29 L.Ed.2d 214 (1971) (opinion of Black, J.). But the plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct and that conduct--even if expressive--falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect --at best a prediction--cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against

conduct that is admittedly within its power to pro-
scribe. Cf. Alderman v. United States, 394 U.S. 165,
174-175, 89 S.Ct. 961, 966-967, 22 L.Ed.2d 176
(1969). To put the matter another way, par-
ticularly where conduct and not merely speech is
involved, we believe that the overbreadth of a
statute must not only be real, but substantial as
well, judged in relation to the statute's plainly
legitimate sweep. It is our view that § 818 is not
substantially overbroad and that whatever overbreadth
may exist should be cured through case-by-case
analysis of the fact situations to which its sanc-
tions, assertedly, may not be applied." Broadrick,
413 U.S. at 615-616, 93 S.Ct. at 2917-2918, 37 L.Ed.2d
at 842.

We decline to make a "judicial prediction or assumption"
that the very existence of section 45-5-203(1)(c), MCA, may
cause others not now before us to refrain from constitutionally
protected speech or expression. The activities which are
encompassed by part "c" of the Montana intimidation statute--
the commission of any criminal offense--are almost exclusively
"conduct." In this context, the overbreadth must be substantial
in relation to the statute's plainly legitimate sweep. The
question of whether the statute is overbroad is not decided
on the basis of whether the proscription applies to threats
of "substantial" or "insubstantial" evil. The decision to
apply felony punishments to seemingly harmless conduct rests
with the legislature. Our sole province is to decide whether
the conduct for which a person is being prosecuted is con-
stitutionally protected.

We do not find it apparent or obvious that section 45-
5-203(1)(c) will deter protected speech. Of course, the
fact that the statute may in the future be applied in a
manner that will violate the constitutional rights of some
party is not beyond the bounds of our perception. However,
the fact that a statute may be misapplied, misused or abused
does not render the statute invalid. Landry v. Daley, 280
F.Supp. at 967. The Montana intimidation statute reflects a

-7-

legitimate state interest in maintaining control over constitutionally unprotected conduct. We hold that the possibility of misapplication of section 45-5-203(1)(c) does not constitute facial overbreadth. Any future misapplication of the statute to protected speech or conduct may be remedied as those cases arise.

Issue No. 2: Is the charge of intimidation supported by the evidence?

There are three elements which the State must prove in order to sustain a charge of intimidation: (1) that the defendant communicated to the victim a threat to commit one or more of the acts enumerated in section 45-5-203(1); (2) that the defendant was without legal authority to perform the threatened act; and (3) that the defendant had the purpose to cause the victim to perform or omit the performance of any act. The State's amended information alleged that Wurtz had the purpose to cause K.S. to engage in sexual conduct with him. Wurtz argues that the State failed to prove that he had the purpose to cause K.S. to perform this act. We find that there was ample evidence which showed that Larry Wurtz had the purpose to cause K.S. to engage in sexual conduct with him.

Wurtz followed K.S. in his vehicle as she walked down the sidewalk. He invited her to have sexual intercourse with him and to perform fellatio upon him. He told her that he was going to rape her. He attempted to block her way by driving his vehicle across her path. He continued to drive through her neighborhood after she had fled from him. This evidence was in addition to the evidence of Wurtz' sexual assault upon S.B. The totality of the evidence supports the conclusion that Larry Wurtz had the purpose to cause K.S. to engage in sexual conduct with him. We hold that

the State proved that Wurtz had the purpose to cause the victim to perform an act.

We note that during oral argument counsel for appellant contended that the conduct described above only warranted a charge of assault, a misdemeanor. While Larry Wurtz could have been charged with a lesser crime, that fact in no way defeats his conviction for intimidation. It is for the prosecutor to determine the specific charge to be brought. When the charge has been proved, we will not reverse simply because a less serious charge could have been brought.

Issue No. 3:   Jury Instructions

Appellant contends that the District Court erred by giving the court's instructions 7, 8 and 19 and by failing to give defendant's instructions 7, 8, 9, 22, 23, 25, 26, 27 and 28. The court's instruction 19 was objected to below and we will discuss that instruction in connection with the admissibility of the testimony of S.B. However, no objection was made at trial to the giving or refusal of the other instructions. The time for appellant's counsel to object to these instructions was before they were submitted to the jury.   Section 46-16-401(4), MCA.   The rule in this situation has long been established:   instructions cannot be challenged for the first time on appeal. McGuinn v. State (1978), 177 Mont. 215, 581 P.2d 417; State v. Hill (1912), 46 Mont. 24, 126 P. 41. The errors now asserted did not affect the substantial rights of the defendant and shall, therefore, be disregarded. Section 46-20-702, MCA.

Issue No. 4: Admissibility of the testimony of S.B.

The admissibility of evidence of prior acts is governed by guidelines set out in State v. Just (1979), ___Mont.___,

-9-

602 P.2d 957, 36 St.Rep. 1649. The Just case established substantive and procedural requirements which must be met before evidence such as the testimony of S.B. may be admitted.

In order for evidence of other crimes, wrongs or acts to be admissible, a court must first determine whether the previous crimes, wrongs or acts:

(1) are sufficiently similar;

(2) are near enough in time;

(3) are offered for one of the purposes permitted by Rule 404(b), M.R.Evid.; and,

(4) whether the probative value of the evidence is substantially outweighed by its inherently prejudicial nature.

The testimony of S.B. described a sexual assault by Larry Wurtz which was accomplished in a manner very similar to the conduct which K.S. described. The conduct could not be said to be a commonplace occurrence. See State v. Hansen (1980), ___Mont.___, 608 P.2d 1083, 37 St.Rep. 657. The events were sufficiently similar to satisfy the first element of the test. Second, the lapse of nine months between the S.B. and K.S. incidents did not make the prior act too remote in time. This Court has permitted the admission of evidence of prior acts which occurred three years before the offense charged. State v. Heine (1976), 169 Mont. 25, 544 P.2d 1212; State v. Jensen (1969), 153 Mont. 233, 455 P.2d 631. Third, the evidence was presented to prove motive, intent, or common scheme or plan. The evidence was relevant to the question of motive and intent. The fact that Wurtz' pursuit of S.B. resulted in sexual assault tended to show that he was motivated by a purpose to cause K.S. to perform an act--to engage in sexual contact with him. The similarity of the incidents also indicated that he was employing a common scheme to achieve his intended result. The testimony

-10-

came under Rule 404(b), M.R.Evid. Finally, on balance, the probative value of the evidence outweighed its prejudicial effects. The evidence was highly probative. Wurtz' assault upon S.B. was the strongest available evidence that he had the purpose to cause K.S. to engage in sexual contact or activity. While the evidence was unavoidably prejudicial, the prejudice was reduced to an acceptable level by the District Court's adherence to the procedural safeguards mandated by Just.

The first procedural requirement is that the defendant be given notice of the State's intention to use prior acts evidence and the purposes for which the evidence is to be admitted. The State's pretrial motion to admit the testimony in question stated that admission was being sought to prove motive, intent, or common scheme or plan. However, the jury was instructed that the testimony was to be considered only as proof of motive, intent or identity. Appellant argues that it was improper to allow S.B.'s testimony to be used to prove identity because appellant was not notified that it would be used for this purpose until the trial began. The basic purpose of notice to the defendant is to prevent surprise. Just, ____ Mont. at ____, 602 P.2d at 960, 36 St.Rep. at 1652. While we agree that the jury should have been instructed in accordance with the purposes denominated in the State's motion, we do not find that the appellant was surprised or prejudiced by the fact that the evidence was ultimately presented for the purpose of proving identity. Before trial the appellant gave notice of his intention to rely upon the defense of alibi. That defense automatically raises the question of the identity of the perpetrator of the crime charged. Under the facts of this case, the use of

-11-

S.B.'s testimony did not surprise the defendant, and no harm came to him by the failure of the instructions to conform to the purposes listed in the State's motion.

The other two procedural elements of Just require the court to give instructions designed to limit the prejudicial effects of the evidence of prior acts. At the time of the introduction of the evidence, the trial court must explain to the jury the purposes of the evidence and must admonish the jury to weigh the evidence only for the stated purposes. The jury which tried Larry Wurtz was given this instruction just prior to the presentation of S.B.'s testimony. The last requirement of Just is that the court must, in its final charge, instruct the jury in unequivocal terms that the evidence was received only for the limited purposes stated earlier, that the defendant is not being tried and may not be convicted for any offense but that charged, and that to convict for other offenses would result in unjust double punishment. This very instruction was presented below.

We find compliance with the substantive and procedural safeguards of Just. The District Court did not err by admitting the testimony of S.B.

Issue No. 5:  Admissibility of testimony of Addison Clark

Officer Clark became involved in the investigation of the K.S. incident five days after the commission of the offense. He testified that K.S. had given the police a license number, that a license plate check had been run on the vehicle, and that the vehicle was registered to Larry Wurtz. The defendant objected that no foundation had been laid to establish that Clark had personally made the license check and that the testimony was hearsay. We agree that the

-12-

testimony lacked foundation and amounted to hearsay. The State should have introduced a certified copy of the registration record of the Department of Motor Vehicles. "A witness may not testify as to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." Rule 602, M.R.Evid. Clark's conclusory statement that the license number was the license number of Wurtz' car should not have been accepted without substantiation. Nevertheless, we do not find this error to be grounds for reversal. Appellant does not contend that the license number was that of a vehicle other than his own. Also, the evidence of ownership of the vehicle was but a small part of the case against Wurtz. The admission of Clark's testimony did not affect Wurtz' substantial rights and the error shall be disregarded. Section 46-20-702, MCA.

The judgment is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

I concur in the result
John C. Sheehy

-13-

Mr. Justice Frank B. Morrison, Jr., dissenting:

I respectfully dissent from the majority opinion.

Section 45-5-203(1)(c), MCA, is quoted in the majority opinion. That statute prohibits a communication, in the form of a threat to commit any criminal offense, when that communication is designed to cause another to perform, or omit performing, an act. As pointed out in the majority opinion, the same type of statute was involved in Landry v. Daley (N.D. Ill. 1968), 280 F.Supp. 938. In that case the court held the statute to be unconstitutional due to overbreadth. The opinion noted that the effect of the statute was to make many forms of political protest punishable as felonies. The court held that threats to commit offenses against the public order were not so substantial that the state could legitimately proscribe the making of such threats.

Our courts have protected against the potential abuses inherent in legislation similar to Montana's intimidation statute. The majority opinion accurately quotes from Broadrick v. Oklahoma (1973), 413 U.S. 601, 611, 93 S.Ct. 2908, 37 L.Ed.2d 830, 839, wherein the United States Supreme Court said:

> "It has long been recognized that the First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society. . . . Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression . . . ."

-14-

The majority attempts to distinguish the Wurtz case from deeply rooted and significant constitutional principles on the basis that Montana's intimidation statute intends to govern conduct and not speech. The majority opinion states: "The activities which are encompassed by part 'c' of the Montana intimidation statute--the commission of any criminal offense--are almost exclusively 'conduct.'" However, the statute in issue provides: "A person commits the offense of intimidation when, with the purpose to cause another to perform or omit the performance of any act, he communicates to another a threat to . . . (c) commit any criminal offense."

The clearly stated purpose of the statute is to prohibit communications. The statute clearly impairs verbal expression. The statute has nothing to do with conduct except that some physical gestures may be deemed communication.

The majority opinion states: "The decision to apply felony punishments to seemingly harmless conduct rests with the legislature." This startling statement shreds the Constitution, abdicates judicial responsibility, and creates an Imperial legislature.

Montana's intimidation statute is, in my judgment, unconstitutional because: (1) First Amendment rights are chilled. (2) The statute makes insubstantial evil punishable as a felony.

I would reverse and remand with directions to dismiss.

_____
                Justice

-15-

Mr. Justice Daniel J. Shea dissenting:

I agree with Justice Morrison that the statute is unconstitutional on its face and thus the conviction must be reversed and the case dismissed. But my dissent does not stop there. Due to the pressures of writing other dissents, and the time pressures of handing down opinions, I do not have time to write a full dissent on the issues as I would like. I therefore briefly express my views on the other issues.

Although a conclusion that the statute is unconstitutional on its face could take care of the problem, I believe also that the charge as filed, is unconstitutional as applied. I believe also that the prosecution is guilty of gross overkill in filing these charges against defendant. During the hearing on oral arguments, the prosecution contended that intimidation was the only crime that could be charged. But during questioning from the bench, the prosecution admitted that defendant's conduct fell within the ambit of a misdemeanor assault charge. I believe that misdemeanor assault was the appropriate charge, and that the decision to charge defendant with intimidation so to subject him to a 10 year prison sentence, was an example of vindictiveness at its worst. Nor can I accept the fact that defendant was sentenced to the maximum 10 years in prison for this conviction. It demonstrates a vindictiveness on the part of the sentencing judge. Although a defendant's background should certainly be considered for sentencing purposes, there must also be a reasonable relationship between the crime committed and the sentence given. Here there is no reasonable relationship at all.

In addition, the crime of intimidation was not proved. It cannot be disputed that the defendant frightened the woman by his words and by his actions--but this fright cannot be

translated into the crime of intimidation.  His words and acts certainly constituted misdemeanor assault, but to say that he is guilty of intimidation is to use the statute in a situation for which it was never designed.

Further, it was error to the extreme for the trial court to admit other crime evidence through the testimony of the woman whom defendant had assaulted near the high school.  Not only were the elements for admissibility not complied with, the court failed miserably in not determining that the inherent prejudicial effect of this testimony would outweigh the probative value of this witness' testimony.  I have no doubt that this witness' testimony sealed the defendant's fate before the jury.  Once the jury heard what the defendant had done on a previous occasion, no matter what the charge was, a jury would be out to convict--and convict it did.  It is clear to me that the trial courts are paying only lip-service to the balancing test before admitting such evidence.  Rather, they are simply concluding that if the evidence will help convict a defendant it should be admitted.

_____
Justice

-17-