**Larry WURTZ, Petitioner and Appellant,**

v.

**Henry RISLEY, Respondent and Appellee,**

**The Attorney General of the State of Montana, Michael T. Greeley, Additional Respondent and Appellee.**

No. 82–3352.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 7, 1982.

Decided Nov. 8, 1983.

---

James C. Bartlett, Kalispell, Mont., for petitioner and appellant.

Chris D. Tweeten, Asst. Atty. Gen., Helena, Mont., for respondents and appellees.

Before GOODWIN, PREGERSON and CANBY, Circuit Judges.

CANBY, Circuit Judge:

Wurtz was convicted in Montana state court of the offense of "intimidation." He sought habeas corpus relief in federal district court, alleging that the Montana intimidation statute is unconstitutionally overbroad. The district court denied his petition. We reverse.

### FACTS

A woman was walking home from work in Kalispell, Montana. As she crossed an alley entrance, a car stopped in the alley behind her. Through an open window, the driver, defendant-appellant Larry Wurtz, belligerently demanded to know whether the woman would have sexual intercourse with him. The woman proceeded down the block. Wurtz drove into the street to keep pace with her and continued to make vulgar remarks.[1] As she approached another alley, Wurtz pulled into the alley entrance across her path and said "I want to rape you," or "I am going to rape you." The woman told Wurtz to "get lost," and walked behind his car, noting his license number. Wurtz backed the car towards the woman and she became frightened. She ran down the block and hid between two houses until Wurtz drove away. She then went home and called the police.

Wurtz was charged with the felony of intimidation under Montana Code Annotated § 45–5–203(1)(c) (1981). He was convicted and received the maximum sentence of ten years in prison. At trial and on appeal to the Supreme Court of Montana, Wurtz argued that M.C.A. 45–5–203(1)(c) is unconstitutionally overbroad. The Montana Supreme Court rejected his contention and affirmed his conviction. *State v. Wurtz*, 636 P.2d 246 (Mont.1981). The district court agreed that M.C.A. § 45–5–203 is not unconstitutionally overbroad and denied Wurtz's petition for habeas corpus. Wurtz appeals.

### FACIAL OVERBREADTH

Montana Code Annotated § 45–5–203(1)(c) (1981) provides:

Intimidation: (1) A person commits the offense of intimidation when, with the purpose to cause another to perform or to omit the performance of any act, he communicates to another a threat to perform without lawful authority any of the following acts:

.     .     .     .     .

(c) commit any criminal offense .... [2]

1. Wurtz's comments are set out in fuller detail in the opinion of the Supreme Court of Montana, *State v. Wurtz*, 636 P.2d 246, 247 (Mont. 1981).

2. Montana Code § 45–5–203 provides in full:
    Intimidation. (1) A person commits the offense of intimidation when, with the purpose to cause another to perform or to omit the performance of any act, he communicates to another a threat to perform without lawful authority any of the following acts:
    (a) inflict physical harm on the person threatened or any other person or property;
    (b) subject any person to physical confinement or restraint;

    (c) commit any criminal offense;
    (d) accuse any person of an offense;
    (e) expose any person to hatred, contempt, or ridicule; or
    (f) take action as a public official against anyone or anything, withhold official action, or cause such action or withholding;
    (2) A person commits the offense of intimidation if he knowingly communicates a threat or false report of a pending fire, explosion, or disaster which would endanger life or property.
    (3) A person convicted of the offense of intimidation shall be imprisoned in the state prison for any term not to exceed 10 years or

The state's theory was that Wurtz threatened to commit the criminal offense of rape in order to cause the woman to engage in various sexual acts. The jury found that he had done so, and the Supreme Court of Montana held that the evidence supported the verdict, a ruling not under review here.

There is little question that the behavior of which Wurtz was convicted may be proscribed and punished under a narrowly drawn statute. The state admitted at an earlier stage in this litigation that Wurtz could have been prosecuted for misdemeanor assault. Wurtz does not contend otherwise. He argues, however, that section 203(1)(c) applies to such a wide range of communication that it prohibits expression protected by the first amendment. This unconstitutional overbreadth, he contends, renders the statute invalid on its face and incapable of supporting his prosecution.

■ There are several related requirements that Wurtz must meet in order to succeed in establishing the invalidity of section 203(1)(c) on its face.[3] First, he must show that the statute impinges upon first amendment expression. For the normal rule is that constitutional rights are personal, and a defendant whose conduct may constitutionally be punished is not permitted to defeat his prosecution on the ground that the governing statute might in other applications violate the rights of third persons. *See, e.g., United States v. Raines,* 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960). The first amendment, however, "needs breathing space," *Broadrick v. Oklahoma,* 413 U.S. 601, 611, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973), and litigants "are permited to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Id.* at 612, 93 S.Ct. at 2916; *see Gooding v. Wilson,* 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). If

such an overbreadth challenge succeeds, the prosecution fails regardless of the nature of the defendant's own conduct. *Coates v. Cincinnati,* 402 U.S. 611, 616, 91 S.Ct. 1686, 1689, 29 L.Ed.2d 214 (1971).

In *Broadrick,* however, the Supreme Court pointed out that application of the overbreadth doctrine to preclude all enforcement of a statute is "strong medicine," 413 U.S. at 613, 93 S.Ct. at 2916, and the Court accordingly delineated important limitations upon its use:

> [F]acial overbreadth adjudication is an exception to our traditional rules of practice and . . . its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from "pure speech" toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe. . . .
> To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.

*Id.* at 615, 93 S.Ct. at 2917–18. The central question in the present case is where section 203(1)(c) fits within the *Broadrick* formulation. At what point in the spectrum from regulation of pure speech to regulation of unprotected conduct does section 203(1)(c) fall? Is it substantially overbroad?

---

be fined in an amount not to exceed $50,000, or both.

3. Wurtz was clearly charged and convicted of violating only subsection (c) of section 203(1). We therefore consider his overbreadth chal-

lenge only with regard to that subsection. *See Lamar v. Banks,* 684 F.2d 714, 717 (11th Cir. 1982). *But see State v. Robertson,* 293 Or. 402, 649 P.2d 569 (1982).

The Supreme Court of Montana, in addressing itself to these questions, concluded that the activities regulated by section 203(1)(c) were "almost exclusively 'conduct.'" *State v. Wurtz,* 636 P.2d 246, 250 (Mont.1981). With respect, we disagree. While subsection (c) itself refers only to commission of any criminal offense, the gravamen of the offense is the communication of a *threat* to commit any such offense in order to cause certain conduct. In construing a similar statute, Justice Linde, speaking for the Supreme Court of Oregon, stated:

> The offense presupposes a "demand" by the defendant, which means a communication in words or otherwise; and as a practical matter, if not as a logical necessity, the legislature no doubt also assumed that the impelling fear will be instilled by speech or its equivalent. If the victim acts in fearful anticipation without any demand, the definition of coercion is not met. The demand, the fear-instilling communication of a specified consequence of noncompliance, and fear-induced compliance all ... are essential.... The challenge under article I, section 8 [of the Oregon Constitution, guaranteeing free speech] therefore cannot be dismissed by saying simply that the statute forbids an "act" rather than "speech." That distinction could be helpful if a law proscribed threatening gestures or other intimidating acts, or if it became necessary to differentiate between the communicative content and the noncommunicative means of proscribed expression. But speech often would be the offender's only act in committing this crime. Indeed, the statute leaves it immaterial whether an accused or another person had either the intent or the capacity to carry out the threatened consequences; a successful bluff seems to suffice.

*State v. Robertson,* 293 Or. 402, 416, 649 P.2d 569, 578 (1982).

Section 203(1)(c) is far more clearly directed at expression than the Oregon statute dealt with by Justice Linde. The operative act forbidden by section 203(1)(c) is communication, and the crime is complete as soon as the threat to commit a criminal act is communicated with the requisite intent. There is no link to action required; the threat need not succeed in inducing the victim to act or refrain from acting, as it was required to do under the Oregon statute. Nor must the threatened criminal act be carried out. The communication condemned by the statute is thus "in no way brigaded with action." *See Speiser v. Randall,* 357 U.S. 513, 536, 78 S.Ct. 1332, 1346, 2 L.Ed.2d 1460 (1958) (Douglas, J., concurring). The thrust of the statute is thus toward pure speech and away from the regulation of conduct.

It is true that threats have traditionally been punishable without violation of the first amendment, but implicit in the nature of such punishable threats is a reasonable tendency to produce in the victim a fear that the threat will be carried out. *See Landry v. Daley,* 280 F.Supp. 938, 962 (N.D. Ill.1968) (three-judge court), *rev'd on other grounds sub. nom. Boyle v. Landry,* 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971). Section 203(1)(c) is not so limited. It is possible by judicial construction to read an element of instilling fear into the term "threat," *id.,* but the Supreme Court of Montana has imposed no such narrowing construction upon section 203(1)(c). "[A] statute ... which makes criminal a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind. What is a threat must be distinguished from what is constitutionally protected speech." *Watts v. United States,* 394 U.S. 705, 707, 89 S.Ct. 1399, 1401, 22 L.Ed.2d 664 (1969) (per curiam).

Nor can section 203(1)(c) be viewed as a traditional condemnation of solicitation to crime. It punishes threats communicated for the purpose of inducing action in others that is perfectly lawful. *See State v. Robertson,* 293 Or. at 417, 649 P.2d at 579. The mere fact that communication induces or "coerces" action in others does not remove it from first amendment protection. *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 911, 102 S.Ct. 3409, 3424–25, 73 L.Ed.2d 1215 (1982); *Organization for a*

*Better Austin v. Keefe,* 402 U.S. 415, 419, 91 S.Ct. 1575, 1577, 29 L.Ed.2d 1 (1971).

█ It is true that section 203(1)(c) is confined to threats to "commit any criminal offense." That fact alone, however, is far from enough to prevent the statute from being overbroad. Indeed, it was the breadth of this provision, applying as it does to minor crimes without victims, that caused a federal court to strike down an identical statute in *Landry v. Daley,* 280 F.Supp. 938, 964 (N.D.Ill.1968) (three-judge court), *rev'd on other grounds sub nom. Boyle v. Landry,* 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971). We reiterate that Wurtz's behavior is an extremely serious matter that Montana has the right to outlaw through a narrowly drawn or narrowly construed statute. In section 203(1)(c), however, Montana has acted far more broadly than that. As we said in *Chase v. Davelaar,* 645 F.2d 735, 737 (9th Cir.1981):

> [S]tatutes punishing expressive conduct "must be carefully drawn or be authoritatively construed to punish only unprotected speech and not be susceptible of application to protected expression." *Gooding v. Wilson,* 405 U.S. 518, 522, 92 S.Ct. 1103, 1106, 31 L.Ed.2d 408 (1972). A statute that violates this principle by substantially abridging protected expression is invalid on its face and cannot be enforced against anyone.

When all of the characteristics of section 203(1)(c) are considered together, it becomes apparent that many relatively harmless expressions would come within its purview. The civil rights activist who states to a restaurant owner, "if you don't desegregate this restaurant I am going to organize a boycott" could be punished for the mere statement, even if no action followed. The example is not unduly hypothetical, and the threatened activity itself would raise delicate first amendment issues if carried out, to say nothing of its merely being threatened. *See NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 928, 102 S.Ct. 3409, 3434, 73 L.Ed.2d 1215 (1982). The statute would also apply to the citizen who tells city council members that if they fail to lower parking fees she will park without putting a coin in the meter. Threats of sit-ins, marches in the street, mass picketing and other such activities are frequently threats to commit acts prohibited by law. Examples may easily be multiplied, but there is no need to belabor the point. The state, of course may punish minor infractions when they actually occur. But to punish as a felony the mere communication of a threat to commit such a minor infraction when the purpose is to induce action—*any* action—by someone, is to chill the kind of "uninhibited, robust, and wide-open" debate on public issues that lies at the core of the first amendment. *See New York Times Co. v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 720, 11 L.Ed.2d 686 (1964).

Summarizing, then, and applying the *Broadrick* overbreadth standards to section 203(1)(c), we first find that the thrust of the statute is toward regulation of "pure speech" rather than conduct. There is no call, therefore, to attenuate the application of facial overbreadth doctrine. *Broadrick,* 413 U.S. at 615, 93 S.Ct. at 2917. Moreover, we find the overbreadth to be real, as did the courts facing identical or similar statutes in *Boyle v. Landry* and *State v. Robertson, supra.* Finally, we find the overbreadth to be substantial in relation to the statute's legitimate sweep. *See Broadrick,* 413 U.S. at 615, 93 S.Ct. at 2917. The statutory language applies so broadly to threats of minor infractions, to threats not reasonably likely to induce a belief that they will be carried out, and to threats unrelated to any induced or threatened action, that a great deal of protected speech is brought within the statute.[4] In short, section 203(1)(c) fairly invites the application of the strong medicine of overbreadth adjudication.

Overbreadth may, of course, be cured by judicial or administrative construction that narrows a statute's application largely to

---

**4.** We note also that the statute is not limited in its application to any discrete group or location; it applies to everyone in Montana. *See*

*Chase v. Davelaar,* 645 F.2d 735, 738 (9th Cir. 1981). *Cf. Broadrick.*

behavior unprotected by the first amendment. *Adamian v. Jacobsen,* 523 F.2d 929 (9th Cir.1975). The Montana Supreme Court, in upholding Wurtz's conviction, indicated its awareness both of the invalidation of a similar statute in *Landry v. Daley, supra,* and of the *Broadrick* tests. It did not narrow the construction of section 203(1)(c), however, because it viewed the statute as one that regulated almost exclusively conduct. *State v. Wurtz,* 636 P.2d 246, 250 (Mont.1981). That view of the statute took into account only the nature of the activity threatened rather than the communication that constitutes the crime. In any event, the Supreme Court did not narrow the literal scope of the statute, and left future "misapplications" of the statute to be remedied as those cases arose. *Id.* Those cases may not arise, however, because speakers may refrain from delivering their constitutionally protected messages for fear of the statute's application,[5] particularly in view of the severity of the authorized penalty—ten years' imprisonment. *See New York v. Ferber,* 458 U.S. 747, 768, 102 S.Ct. 3348, 3361, 73 L.Ed.2d 1113 (1982). It is that chilling effect that the first amendment forbids. We therefore conclude that, in the absence of a narrowing construction, section 203(1)(c) is void on its face for overbreadth. *See Erznoznik v. Jacksonville,* 422 U.S. 205, 216–17, 95 S.Ct. 2268, 2276–77, 45 L.Ed.2d 125 (1975); *Lewis v. New Orleans,* 415 U.S. 130, 134, 94 S.Ct. 970, 972, 39 L.Ed.2d 214 (1974).

It follows that Wurtz's conviction is invalid and that his application for a writ of habeas corpus must be granted.

REVERSED.

---

**5.** Counsel for the State points out that Wurtz appears to be the first person prosecuted under the statute, and that it is therefore unrealistic to suppose that the statute has any widespread effect of chilling constitutionally protected speech. We do not agree. The more success-

ful the *in terrorem* effect of the statute, the fewer will be the prosecutions.