No. 82-441

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

EVELYN FERREL,

Defendant and Appellant.

APPEAL FROM: District Court of the Sixteenth Judicial District,
In and for the County of Fallon,
The Honorable Alfred B. Coate, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Gene Huntley argued, Baker, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Judy Browning argued, Asst. Atty. General, Helena
Denzil R. Young, County Attorney, Baker, Montana
Marc Racicot, Count Prosecutor Services, Helena

Submitted: 11/29/83
Decided: 3/27/84

Filed: MAR 27 1984

Ethel M. Harrison

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Evelyn Ferrel appeals from her convictions in the District Court, Sixteenth Judicial District, Fallon County, of felony theft and felony intimidation. She was given a one year suspended sentence on the crime of felony theft, ordered to make restitution on the sum of $500, and assessed a $500 fine. She was additionally given a one year suspended sentence for the conviction of intimidation.

We reverse the convictions of Evelyn Ferrel, with instructions to the District Court to dismiss the charges against her.

Evelyn Ferrel and her husband Allie, ages 58 and 73 respectively in 1981, had been employed in western Fallon County, Montana on a large ranch known as the MacKay Ranch, or the MacKay Trust Ranch. For 12 years, Allie served as the ranch manager and Evelyn as ranch bookkeeper. Donald MacKay, the executive member of the MacKay family trust, supervised the activities of the Ferrels. It seems undisputed that in large part, the day-to-day operations of the ranch were taken care of by the Ferrels, including decisions as to the sale of cattle, haying operations, collecting monies, making deposits in a bank in Miles City, and drawing checks upon such bank account for ranch expenses.

On November 12, 1980, under Donald MacKay's direction, the Ferrels disposed of cattle belonging to the ranch at a market in St. Onge, South Dakota. Because MacKay desired that the cattle sale appear to have been made in 1981 rather than in 1980 for tax purposes (in 1981 the cows and heifers would have attained 2 years of age which according to Mr. MacKay would entitle the ranch to capital gains treatment

rather than ordinary income treatment for income tax purposes). This purpose was accomplished by having the market owner invest the funds for the cattle in a bank time certificate of deposit payable to the market owner maturing in the spring of 1981. When the certificate matured, the Ferrels went to South Dakota and cashed the time deposit certificate and obtained the funds, $61,727, which subsequently they deposited in the ranch bank account in Miles City. However, at the same time that they received the cash deposit, the Ferrels were also presented with a check payable to the MacKay ranch in the amount of $4,364.74, which represented interest on the monies that had been deposited under the bank certificate in South Dakota. This fact was reported by the Ferrels to MacKay. He instructed the Ferrels to deposit the $61,727, but not to cash the $4,364.74 check until MacKay decided how it should be handled. The evidence is not clear as to the period of time for which the Ferrels were to hold the check. It was contended that they were to do so for a few days. It is clear that MacKay did not want the check to be held too long because he felt there might be some difficulty cashing it, if there was too much delay before it was presented for payment.

MacKay was at the ranch premises in Fallon County on May 22, 1981, when all of these matters had occurred respecting the checks. He did not on that date indicate any dissatisfaction with the Ferrels' work. Because of this, the Ferrels went ahead and put in their usual garden on the ranch premises, as they had done in the years preceding during their tenure as employees on the ranch. On June 9 or 10, MacKay returned to the ranch and told the Ferrels that their employment was terminated as of June 13, 1981. He said then

- 3 -

that they could harvest the garden that had been planted. Within a few days, however, he extended the time of their employment to June 30, 1981.

On or around June 11, 1981, Evelyn Ferrel cashed the interest check and received the funds therefore at a bank not the one usually used for the ranch finances.

MacKay testified that on 3 occasions, one on July 1, 1981, and two others in the month of June, he demanded of the Ferrels the bookkeeping records and accounts of the MacKay ranch, and the interest check. On the first occasion, he testified, Evelyn made the excuse that the books were not current and she wanted to have them brought up-to-date before she transferred the documents to him. It is not clear from his testimony what occurred on the other occasions.

The Ferrels testified that they had originally been told by Mr. MacKay that they could maintain and harvest the garden which they had planted, but later Mr. MacKay told them that they could not harvest the garden. Evelyn Ferrel told Mr. MacKay that she would not turn over the proceeds of the interest check to him until he paid them $500 which she contended was the value of the garden which he was withholding from them.

On June 30, 1981, the Ferrels went to their attorney in Baker, and asked him how they should turn the bookkeeping records over to Mr. MacKay. The attorney informed the Ferrels, and they, the same day informed MacKay that he was to come to the attorney's office at 2:30 p.m. for the purpose of settling their differences. However, MacKay refused to go to the attorney's office. Other arrangements were made and the parties met without the attorney present at the ranch premises on July 1, 1981, where the Ferrels transferred to

MacKay the bookkeeping records and documents, about which there is no dispute in this case now. Evelyn Ferrel however, advised MacKay that she would hold the proceeds of the interest check until MacKay paid to the Ferrels the sum of $500 for the value of the garden, now upon the advice of counsel. The Ferrels then went to the office of their attorney in Baker, and there delivered to him the funds from the interest check, which the attorney deposited in his trust account.

MacKay refused the condition. He went instead to the office of the county attorney in Fallon County. The county attorney filed criminal charges of theft and intimidation against Evelyn Ferrel and her husband.

At the close of the evidence in the trial against them, the court dismissed on motion the case against Allie Ferrel. The case against Evelyn Ferrel was submitted to the jury which resulted in the convictions to which we have earlier adverted.

There are in this case a number of contentions, issues and sub-issues between the parties, but for the purposes of this opinion we will discuss only the issues which we feel are dispositive of the case.

I.

We turn first our attention to the conviction of Evelyn Ferrel on the charge of intimidation.

Count V of the amended information against Evelyn Ferrel charged that, "with the purpose to cause Donald MacKay to perform an act, namely to make a payment of $500.00 to Evelyn or Allie Ferrel or both, Evelyn Ferrel communicated to Donald MacKay a threat to perform without lawful authority the offense of theft, in violation of Section 45-5-203, M.C.A."

The sufficiency of the charge may be dubious (see section 46-11-401, MCA), but it was not challenged on that ground. It was Evelyn Ferrel's contention throughout the trial and on appeal that the charge of intimidation could not stand against her because in fact her threat to withhold the proceeds of the check until she was paid $500 did not constitute a theft.

We must perforce consider her conviction of intimidation in the light of the decision of the United States Court of Appeals for the 9th Circuit in Wurtz v. Risley (9th Cir. 1983), 719 F.2d 1438.

Wurtz was convicted in the District Court in Flathead County, Montana of intimidation arising from his actions in following a woman pedestrian in his automobile and shouting to her through an open window that he was going to rape her. Wurtz was charged under section 45-5-203(1)(c), MCA, (1981), which provides:

> "Intimidation. (1) A person commits the offense of intimidation when, with the purpose to cause another to perform or to omit the performance of any act, he communicates to another a threat to perform without lawful authority any of the following acts:
>
> ". . .
>
> "(c) commit any criminal offense."

In State v. Wurtz (1981), 195 Mont. 226, 636 P.2d 246, this Court upheld the constitutionality of the charge against Wurtz under section 45-5-203(1)(c) as above quoted. After his conviction was upheld here, Wurtz took his case on habeas corpus proceedings to the Federal District Court in the western district of Montana and eventually to the United States Court of Appeals for the 9th Circuit. In Wurtz v. Risley, supra, the Court of Appeals held that

- 6 -

section 45-5-203(1)(c) was unconstitutional for overbreadth. That court held that the thrust of the statute was toward pure speech and away from the regulation of conduct, contra to what we had held in State v. Wurtz, supra, and went on to say:

> "It is true that threats have traditionally been punishable without violation of the first amendment, but implicit in the nature of such punishable threats is a reasonable tendency to produce in the victim a fear that the threat will be carried out (citing cases). Section 203(1)(c) is not so limited. It is possible by judicial construction to read an element of instilling fear into the term "threat", id., but the Supreme Court of Montana has imposed no such narrowing construction upon section 203(1)(c) '[A] statute. . . which makes criminal a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind. What is a threat must be distinguished from what is constitutionally protected speech.' (citing a case). "
> 719 F.2d at 1441.

Moreover the Court of Appeals held that the constitutionality of the statute could be attacked by Wurtz even though he may have been guilty of conduct which could be constitutionally punished and his argument against the validity of the statute involved applications to the rights of third persons. 719 F.2d at 1440.

The Court of Appeals in Wurtz v. Risley, supra, left open to this Court the possibility that the validity of section 45-5-203(1)(c) might be at least partially saved by a narrow construction of its application from this Court. This case involving Evelyn Ferrel is not one that affords such an opportunity. In this case Evelyn Ferrel's speech is the only act to which the intimidation statute can be applied. It cannot be said that her speech instilled fear in Donald MacKay or included threatening gestures or intimidating acts. In Wurtz it appeared that the defendant could have been

- 7 -

charged with misdemeanor assault in the first instance, but that is not the case here.

In the light of the holding in the Court of Appeals in Wurtz v. Risley, supra, we reverse the conviction of Evelyn Ferrel on the charge of intimidation, and direct a dismissal of that charge against her.

II.

We turn now to a consideration of the conviction of Evelyn Ferrel on the charge of felony theft.

She was charged and convicted in the District Court on Count II of the information:

"On or about and during the period of May 26, 1981 to July 1, 1981 at Fallon County and Carter County Montana, Evelyn Ferrel, did purposely or knowingly obtain or exert unauthorized control over a Cashiers' Check of Tri-State National Bank of Belle Fourche, South Dakota payable to MacKay Ranch being Check # 5834 in the amount of $4,364.74 dated May 26, 1981 or the money derived or obtained by cashing said check, namely $4,364.74, the property of another, namely the MacKay Ranch, and purposely or knowingly used the property in such a manner as to deprive the owner, the MacKay Ranch, of the property."

When on the appeal in this case we were considering the instructions given by the District Court under this charge, and the contention of Evelyn Ferrel that no crime had been committed by her, a larger question began to emerge, did the language of Count II state a crime as alleged?

In this connection a consideration of the applicable statutes is necessary.

The crime of theft, is defined in pertinent part in section 45-6-301, MCA, as follows:

"Theft. (1) A person commits the offense of theft when he purposely or knowingly obtains or exerts unauthorized control over property of the owner and:

"(a) has the purpose of depriving the owner of the property;"

The term "deprive" is defined in the general definitions contained in the Criminal Code, in section 45-2-101(19) as follows:

"'Deprive' means to withhold property of another:

"(a) permanently;

"(b) for such a period as to appropriate a portion of its value;

"(c) with the purpose to restore it only upon payment of reward or other compensation; or

"(d) to dispose of the property and use or deal with the property so as to make it unlikely that the owner will recover it."

Note that the definition of "deprive" states four alternates, and the definitions are stated in the disjunctive, through the use of the word "or". Count II in the information does not disclose which of these alternates Evelyn Ferrel is charged with committing.

In State v. Johnson (Mont. 1982), 646 P.2d 507, 39 St.Rep. 1014, we recognized that the term "deprive" is defined in four alternate ways and that proof of violation of one definition is essential for finding the crime of theft. In Johnson, the State proceeded on the theory that "deprive" as defined by section 45-2-101(19)(d) was applicable. The jury was instructed that the word "deprive" meant the withholding of the property of another "to dispose of the property and use or deal with the property so as to make it unlikely that the owner would recover it." Only that definition was given to the jury, and the defendant was found guilty under that definition. On appeal the defendant contended that another definition, that of subsection (a),

that "deprive" meant to withhold the property of another permanently, should have been given to the jury. This Court held however that the definitions in section 45-2-101(19) are alternate definitions, and that if the evidence supported the verdict of the jury on the definition presented to the jury, the verdict would be upheld.

The procedural facts in this case are different. Here the defendant was charged in the broad terminology of section 45-6-301, and the trial court gave the jury all four alternate definitions of "deprive." We are unable to determine which definition of "deprive" the jury used in arriving at the conviction. It is obvious that not all of the definitions used could be supported under the facts in this case. Since it cannot be determined upon which theory the jury may have convicted the defendant of theft, this alone would require, on appellate review, reversal of the conviction. State v. Lundblade (Mont. 1981), 625 P.2d 545, 38 St.Rep. 441; United States v. Carlson (9th Cir. 1980), 616 F.2d 446.

Having demonstrated that reversal is inescapable under this case, we are next brought to the determination of whether, under the unique facts here, Evelyn Ferrel can be charged with the crime of theft. It is obvious that three of the definitions of the term "deprive" cannot be used against her. She did not assume to withhold the property permanently, or for such a period as to appropriate a portion of its value, or to dispose of the property and use or deal with it as to make it unlikely that the owner would recover it. Section 45-2-101(19)(a), (b), (d). The only possible definition of "deprive" that might apply to the facts of this case, is that contained in section 45-2-101(19)(c), that, as

- 10 -

to the property, she had "the purpose to restore it only upon payment of reward or other compensation."

In considering section 45-2-101(19)(c) we are once again, shades of Wurtz, supra, brought face to face with overbreadth.

It is immediately apparent that section 45-2-101(19)(c) would properly apply to one withholding personal property of another for ransom, as for example "dog-napping"; or to most cases of extortion not based on claim of right. But under a literal interpretation of section 45-2-101(19)(c), would it apply to a storekeeper who kept all of the proceeds of a check presented to him by a customer for a previous indebtedness owed by the customer? Or to a garage-keeper who kept an automobile until a garage bill had been paid? Or to a landlord who kept property of a tenant until the rental was paid? Or to a tenant farmer who withheld machinery of his landlord until the tenant was permitted to harvest crops planted on the leased farm during the term of the lease? In all these examples, the person withholding may have been mistaken as to his right to withhold, but did he thereby commit a crime of theft? The questions answer themselves, but a literal application of section 45-2-101(19)(c) would make the actors in these situations guilty of the crime of theft.

We can find the answer here by examining the criminal statutes themselves. As we have noted, section 45-6-301(1)(a), provides that a person commits the offense of theft when he purposely or knowingly obtains or exerts unauthorized control over property and "has the purpose" of depriving the owner of the property.

"Purpose" is defined in section 45-2-101(58). There it is stated in part that "when a particular purpose is an element of an offense, the element is established although such purpose is conditional, <u>unless</u> <u>the</u> <u>condition</u> <u>negatives</u> <u>the</u> <u>harm</u> <u>or</u> <u>evil</u> <u>sought</u> <u>to</u> <u>be</u> <u>prevented</u> <u>by</u> <u>the</u> <u>law</u> <u>defining</u> <u>the</u> <u>offense</u>." (Emphasis added). At most, in this case, the purpose of Evelyn Ferrel to retain the interest check was conditional, the condition being that MacKay pay over the value of the garden to which she claimed a right. That condition "negatives the harm or evil sought to be prevented by the law defining the offense." The evil the statute seeks to prevent is the permanent deprivation of the owner of all or a part of his property. Evelyn Ferrel may have committed a civil trespass; she did not commit a crime as defined in our statutes under the unique facts of this case.

There are other issues raised by the parties in this case relating to purpose and knowledge, the application of the concept of intent, the use of other-crimes evidence, and related matters, but is not necessary to discuss them in view of our application of the criminal statutes.

Accordingly, each judgment of conviction of Evelyn Ferrel is reversed and the counts against her dismissed.

John C. Sheehy

_____
                 Justice

We Concur:

_____
   Chief Justice

_____John Conway Harrison_____

_____[signature]_____

_____[signature]_____

_____

_____
Justices


Mr. Justice L. C. Gulbrandson is unavailable for signature.

Mr. Chief Justice Haswell, concurring in part and dissenting in part.

I concur in reversing and dismissing defendant's conviction of felony intimidation. The U.S. Court of Appeals for the Ninth Circuit has held Montana's intimidation statute unconstitutional for overbreadth as indicated in the majority opinion. Wurtz v. Risley (1983), 719 F.2nd 1438.

However, I would affirm defendant's conviction of felony theft.

The majority hold that reversal is inescapable because it cannot be determined upon which of the four alternative definitions of "deprive" in Section 45-2-101(19), MCA, the jury followed in convicting the defendant. In my view this analysis and holding is incorrect in the context of this case.

Here defendant was charged in the words of the theft statute with purposely or knowingly obtaining or exerting unauthorized control over the property of another with the purpose of depriving the owner of the property. Section 45-6-301(1)(a), MCA. The defense at the trial was that the defendant lacked the requisite intent to commit theft because she did not intend to permanently deprive the owner of his property, but simply openly withheld the proceeds of the check to require the owner to keep his alleged agreement to allow defendant to raise and harvest a garden.

The evidence at the trial supported only one of the four alternative definitions of "deprive" in the statute, viz, to withold property of another "with the purpose to restore it only upon payment of a reward or other compensation." Section 45-2-101(19)(c), MCA. No evidence was intro-

duced at the trial which would support any of the other three alternative definitions.

The District Court should not have given the other three alternative definitions of "deprive" as they were not relevant nor material to the evidence or issues in the case. State v. Lundblade (Mont. 1981), 625 P.2d 545, 38 St.Rep. 441; State v. Brooks (1967), 150 Mont. 399, 436 P.2d 91. I would find this error harmless beyond a reasonable doubt in the context of the trial as there was no evidence on which the jury could base a conviction except sub-section (c) of Section 45-2-101(19), MCA. The majority opinion acknowledges this in the following statement contained therein:

> ". . . She did not assume to withhold the the property permanently, or for such a period as to appropriate a portion of its value, or to dispose of the property and use or deal with it as to make it unlikely that the owner would recover it. Section 45-2-101(19)(a), (b), (d). The only possible definition of 'deprive' that might apply to the facts of this case is that contained in Section 45-2-101(19)(c), that, as to the property she had 'the purpose to restore it only upon payment of reward or other compensation.'"

Montana statutes provide in pertinent part:

> ". . . No cause shall be reversed by reason of any error committed by the trial court against the appellant unless the record shows that the error was prejudicial." Section 46-20-701, MCA.

> "Types of errors noticed on appeal. Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. . ." Section 46-20-702, MCA.

I would apply the foregoing rules and find that the error did not affect the substantial rights of the appellant, should be disregarded and that the error was harmless beyond a reasonable doubt.

Additionally the majority go beyond granting the appellant a new trial and instead dismiss the charge of theft against her because "the evil the statute seeks to prevent is the permanent deprivation of the owner of all or part of his property" as set forth in the majority opinion. The words of the statute do not require permanent deprivation of the owner of all or part of his property. The theft statute as applied to the facts of this case simply requires "a purpose to restore it only upon payment of a reward or other compensation" Section 45-2-101(19)(c), MCA. This statute fits the facts of this case like a glove. The jury so held.

I would affirm defendant's conviction of felony theft.

_____
Chief Justice

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 82-441

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

EVELYN FERREL,

        Defendant and Appellant.

FILED

APR 11 1984

*Ethel M. Harrison*
CLERK OF SUPREME COURT
STATE OF MONTANA

---

SPECIAL CONCURRENCE AND DISSENT
OF MR. JUSTICE L. C. GULBRANDSON

---

Opinion Decided:    March 27, 1984

Filed:

*Ethel M. Harrison*

_____
        Clerk

I join with Chief Justice Haswell in concurring in part and dissenting in part.

_____
Justice