No. 81-281

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

WILLIE JAMES JOHNSON,

Defendant and Appellant.

Appeal from: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellant:

McKinley Anderson, Bozeman, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Donald White, County Attorney, Bozeman, Montana

Submitted on briefs: March 25, 1982

Decided: June 10, 1982

Filed: JUN 1 0 1982

Thomas J. Kearney
Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

Following a jury trial, defendant Willie James Johnson, Jr., was found guilty on December 29, 1980, of theft, a felony, in violation of section 45-6-301(1)(a), MCA, 1978. Pursuant to that verdict, the Eighteenth Judicial District Court issued a sentence and judgment on January 12, 1981, ordering defendant to serve ten years at the Montana State Prison, Deer Lodge, Montana, and designating defendant a non-dangerous offender. Defendant now appeals from that verdict, judgment and sentence. We affirm.

While traveling from California to Oklahoma to spend Christmas with his family, Johnson "hitched" a ride to Bozeman, Montana. He rented a room for two nights at the Baxter Hotel, at a cost of $10.00 per night. When he began his journey to Oklahoma, defendant had $200.00. After paying for his room in Bozeman, Johnson had $20.00.

On November 29, 1980, Johnson went to the Main Mall in Bozeman. He testified that he entered the Jensen Jewelry Store to look for a Black Hills gold ring to match the Black Hills gold pendant he was wearing. Upon noticing that it was time for him to meet a new acquaintance, Sherry, at the Woolco Store, defendant hurried out of Jensen's.

When Sherry was not at Woolco, defendant stated he left the mall and began to run toward the Baxter Hotel. While running, allegedly a common activity for defendant, he realized that a group of people were chasing him. He became scared and continued to run. At trial, defendant stated: "I seen all these white people with sticks running at me. You know, I thought, 'Hey, what's happening, am I in Mississippi or something'. . ." Defendant, a black man, was apprehended in a trailer park shortly after noticing his pursuers.

-2-

The prosecution presented several employees and customers of Jensen Jewelry Store as witnesses. Their testimonies were generally consistent, but varied greatly from that of defendant.

Lisa Pribsnic is a part-time clerk at Jensen's. On November 29, 1980, she assisted a blonde woman looking at wedding rings. A black man, sitting next to the blonde woman, asked to see Black Hills gold rings to match the Black Hills gold pendant he was wearing. "He was tall, about six foot, black. He had string tied in his hair; very short, curly hair. He was wearing some sort of a vest. I don't remember what color it was. He was very nervous. His eyes were red and they wouldn't look directly at somebody. His speech was very slow." The witness identified the defendant as the black man who was in the store and defendant's pendant, State's Exhibit No. 2, as being the pendant shown her by him.

Ms. Pribsnic stated that she returned all the rings she had been showing the two customers to their respective cases and locked the cases before going to the back room. When she returned, the black man was examining a store mailer. She left to gift wrap a package for another customer and the theft occurred.

According to her testimony, Ms. Pribsnic, while waiting on the blonde woman, had not entered the case from which the rings were stolen. She also stated that the lock on that case was malfunctioning. The automatic lock often did not work, thereby requiring a key in order to adequately lock the case.

Thomas H. Campbell and his wife were looking at cigarette lighters in the window of Jensen Jewelry Store around 1:30 P.M., November 29, 1980. As Mr. Campbell entered the store,

he saw "a young black man behind and to the left of the counter" with "his hands in the display glass," holding a tray of some sort. He did not see what, if anything, was in the tray. Mr. Campbell went to the main counter to seek a sales person, turned and saw the young black man "rapidly leaving the store."

Although Campbell could not positively identify defendant as the young black man in Jensen's, he described the man as follows: "He was young, black; as I recall he had something funny in his hair. It was pleated or braided or something like that and I think he was wearing a green jacket or garment of some kind." He identified defendant's vest as looking familiar to him, similar to what the black man in Jensen's was wearing.

Donald Floth and his girlfriend, Sue Whiting, were in Jensen Jewelry Store on November 29, 1980. A man came over to them and started talking. According to Floth, "[h]e was tall, slim, black. He had a small beard, and he talked really different, slowly. . . He told me that he was going to make a 'quick buck' and that you had to do something to make a buck in this world." Floth testified at trial:

> "Q. Where was this man whom you saw at that point in time?
>
> "A. He was at the far case against the wall, and he was looking over it with his rear end to the wall, looking over it.
>
> "Q. And what did you see him do?
>
> "A. I saw him take out a tray.
>
> "Q. And what did you see him do after he took it out?
>
> "A. I didn't see him dump the tray, but I saw his wrist turn.
>
> "Q. And what happened after his wrist turned?

-4-

"A. He put the case back in and closed the door.

"Q. Then what happened?

"A. Then he bundled up his gloves and his hat together and started to walk out. Meanwhile, my girlfriend and I were talking to the personnel."

Later in his testimony, Floth further described the man.

"A. He was tall, black. He had a small beard. It wasn't a bushy beard. It was tight and it was small, and --

"Q. Do you remember anything about his hair?

"A. Yeah. He had a piece of string hanging off it. It wasn't tied in or anything, it was just hanging there.

"Q. Did he have -- was he wearing any jewelry that you noticed?

"A. He had a pendant on. I noticed his vest and pants. He had baggy pants on, kind of a tweed.

"Q. Do you recall what kind of vest it was?

"A. It was green.

"Q. Do you recognize State's Exhibit No. '1'?

"A. Yeah.

". . .

"Q. What is it?

"A. It looks like the vest he was wearing."

Mr. Froth was, however, unable to identify the State's Exhibit No. "2" as the pendant worn by the man in the store.

Diane Murray Willard was the sales clerk to whom the theft was reported. After the report, she walked over to the case area, saw the empty tray and saw "a tall, thin, black guy. He had a maroon sweater and a green down vest and some string in his hair." She identified the defendant as that man.

Next, Ms. Willard went to the assistant manager, Brad Siegel and told him of the theft. The suspect left the store rapidly while the two were talking. Mr. Siegel testified that upon hearing of the theft, he ran to the case, verified that the tray was empty and then ran out of the store after the suspect.

Mr. Siegel pursued the suspect down the mall corridor, across the parking lot, over the interstate and through a field. Siegel received assistance from four young men he passed during the chase. They apprehended the suspect in a trailer park where they then awaited the arrival of the police. Johnson was out of Siegel's sight three times: when Siegel first gave chase; when Johnson rounded a corner in the mall; and while Siegel attempted to cross the interstate.

The police took Mr. Siegel's statement, then placed defendant under arrest. When he was arrested, defendant was wearing a green vest, a Black Hills gold pendant and he had string in his hair. A pat-down search was conducted, but no rings were found in defendant's possession. Later searches of the path of pursuit, the trailer park area, the roof of the mall, the trash from the mall and the police car in which defendant was transported produced nothing. The rings have never been found.

Based upon the above facts presented at trial, the defendant was found guilty of the theft of seven wedding ring sets from the Jensen Jewelry Store in the Main Mall, Bozeman, Montana. In appealing that conviction, defendant presents the following issues to this Court:

(1) Whether the evidence presented by the State was sufficient to sustain a conviction, namely:

(a) Whether the State adequately proved Jensen Jewelers

-6-

owned the rings taken in the theft.

(b)  Whether the State proved the defendant exercised unauthorized control over the property of another.

(2)  Whether the District Court erred in giving Instruction No. 11 and in refusing to give defendant's offered Instruction No. 2.

Defendant contends that the State did not adequately prove Jensen Jewelers to be the owner of the rings taken in the theft.  This contention is founded upon Illinois law that includes the existence of a corporation as an element of the crime to be proven when theft from a corporation has been alleged.

An article at 88 A.L.R. 485 discusses the necessity of alleging and proving in a charge of theft that the owner of the stolen property, if a corporation, is incorporated. There are two views, the oldest being that followed by Illinois.  The more modern view is that such allegation and proof is not necessary.  We agree with the modern viewpoint.

In a theft charge, the identity of the owner of the stolen property has been considered essential for several reasons.  The prosecution must show that the stolen property does not belong to the accused.  Stewart v. State (Ala. 1968), 438 P.2d 387.  The accused must be made fully aware of the charges so that he might prepare a full and adequate defense.  State v. Morrow (Tenn. 1975), 530 S.W.2d 60; Martin v. State (Okl. 1950), 222 P.2d 534.  The property must be adequately identified, including ownership, so as to protect the accused from any further prosecution involving the theft of that same property.  State v. Morrow, *supra*. None of these reasons are served by proving the legal existence of the corporate owner.  Martin v. State, *supra*; Stewart v.

-7-

State, supra; State v. Hume (1950), 145 Me. 5, 70 A.2d 543; State v. Morrow, supra.

In Montana, proof of possession suffices to prove ownership for purposes of theft. Section 45-2-101(46), MCA; State v. Dolan (1980), 37 St.Rep. 1860, 620 P.2d 355. This is true whether an individual or a corporation is the owner of the property. Determining ownership by proving possession of property: (1) will adequately identify the property so as to prove that it does not belong to the accused; (2) allow the accused to prepare a full and adequate defense; and (3) prevent further theft charges against the accused regarding the same property.

The prosecution proved through the testimony of Michael Brad Siegel, as well as other store employees, that Jensen Jewelry Store was in possession of the wedding ring sets before they were stolen. Proof of possession is adequate in this context. See State v. Dolan, supra.

Defendant next contends that a conviction of theft cannot be sustained as the State never proved the defendant exercised unauthorized control over the rings. This contention is based on defendant's assertion that the testimony never showed him to have been in actual possession of the wedding ring sets.

Although no witness actually saw the rings in the defendant's possession, several employees and customers of Jensen Jewelry Store saw defendant behind the counter where the ring case was kept, with his hand inside the case where the rings were, holding the tray the rings were in and rapidly leaving the store shortly thereafter. The tray contained rings ten minutes prior to defendant's exit. The tray was found to be empty immediately after his departure.

Instruction No. 8 was taken directly from section 45-2-101(39), MCA: "You are instructed that 'obtains or exerts control' includes but is not limited to the taking, carrying away, or sale, conveyance, or transfer of title to, interest in, or possession of property." After applying the evidence presented at trial to the above instruction, the jury found the defendant to have obtained or exerted unauthorized control over the rings and found him guilty of theft. There is substantial credible evidence to support the jury's findings and verdict. We will not overturn it. "Given a certain legal minimum of evidence, this Court will not substitute its judgment for that of the jury." State v. Martinez (1980), 37 St.Rep. 982, 989, 613 P.2d 974, 980. See also State v. Pendergrass (1980), 37 St.Rep. 1370, 615 P.2d 201; and State v. Merseal (1974), 167 Mont. 409, 538 P.2d 1364.

The second issue raised in this appeal concerns the adequacy of the jury instructions given by the District Court. Defendant first contends that the District Court erred by giving Instruction No. 11 rather than giving his offered Instruction No. 7. Instruction No. 11 states in statutory language: ". . . [t]he term 'deprive' means to withhold property of another, to dispose of the property and use or deal with the property so as to make it unlikely that the owner will recover it." Section 45-2-101(19)(d), MCA. Defendant proposed the definition of "deprive" found at 45-2-101(19)(a), MCA: "'Deprive' means to withhold property of another permanently."

These definitions are alternative definitions. The one chosen to be used in this instance adequately defines the word "deprive" as it applies to these facts. Here, defendant denied asserting any control. There was no issue as to

permanency. The Court properly gave Instruction No. 11 as opposed to Defendant's offered Instruction No. 7.

Defendant also objects to the trial judge's failure to give defendant's offered Instruction No. 2: "You are instructed that 'possession' is the knowing control of anything for a sufficient time to be able to terminate control." The trial judge chose instead to give Instruction No. 8 concerning the definition of "obtains or exerts control." The definition of theft found in section 45-6-301(1)(a) does not refer to the "possession" of goods; rather, it refers to obtaining or exerting unauthorized control over goods. Therefore, it was proper for the trial judge to instruct the jury regarding "obtaining and exerting control" rather than "possession."

This Court must look at jury instructions as a whole to determine if they fully and fairly present the applicable law of the case. State v. Farnes (1976), 171 Mont. 368, 375, 558 P.2d 472, 476; State v. Higley (1980), 37 St.Rep. 1942, 1953, 621 P.2d 1043, 1054. The instructions given to the jury in the instant case fully and fairly present the law of theft as it applies to defendant Johnson.

We affirm the judgment of the District Court.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-10-