82-419

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

_____

THE STATE OF MONTANA,

Plaintiff and Respondent,

vs.

KENNETH NORMAN ZAMPICH,

Defendant and Appellant.

_____

Appeal from: District Court of the Eighth Judicial District
In and for the County of Chouteau
Honorable H. William Coder, Judge presiding.

Counsel of Record:

For Appellant:

Daniel Donovan argued, Great Falls, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Dorothy McCarter argued, Assistant Attorney General, Helena Montana
Allin H. Cheetham, County Attorney, Fort Benton, Montana

_____

Submitted: May 31, 1983

Decided: August 1, 1983

Filed: AUG 1 1983

*Ethel M. Harrison*
_____
Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

Kenneth Zampich was convicted by a jury in the Eighth Judicial District Court of mitigated deliberate homicide. He was sentenced to twelve years in prison, with four of the years suspended. Zampich now appeals his conviction and sentence. We affirm both.

Defendant worked for Gary Wigger as a grain truck driver. On August 26, 1981, defendant, Wigger and Scotty Smith went to the Carter Tavern in Carter, Montana, to drink beer and play pool after work. Ray Cline, the owner, joined them. The pool games and the evening were relatively uneventful. Defendant stopped drinking beer and commenced drinking soda pop sometime late in the evening. Witnesses testified that he was not drunk.

As defendant was preparing to leave the bar, he attempted to purchase a bag of ice. Ray Cline argued with him over the price and a fist fight ensued. Cline hit defendant in the head with his fist. The blow was intensified by a turquoise ring Cline was wearing. The blow caused defendant to fall against a juke box.

Scotty Smith broke up the fight and defendant left, saying: "Well, we'll see what my 30.06 has to say about it." Defendant's son, Patrick, rode home with his father in their pickup truck. Pat testified that during the ride, his father said that he ought to kill the "son-of-a-bitch".

Sharon Zampich, wife of defendant, was watching television when her husband and Pat arrived home at 1:45 a.m. Defendant did not speak to his wife, but went into his bedroom and returned with his 30.06 rifle. When Sharon Zampich asked what he was doing, defendant responded that,

2

"he was going after Ray Cline." He then left the house and drove his pickup truck back toward the Carter Tavern.

Sharon Zampich testified that her husband was not himself at that time. He appeared to be in a daze and his eyes were glazed. Pat was also uncertain his father knew what he was doing.

Scotty Smith, Gary Wigger and other bar patrons testified that approximately ten minutes after defendant had left the bar, a shot was heard and Ray Cline fell to the floor. The shot came through a back window and had struck Cline in the back.

Ken Zampich did not return home that night. He awoke the next morning in his truck on a sideroad near Floweree, Montana. His head had been bleeding and both his head and his back were aching. He drove to Great Falls, where he was peacefully arrested that same day. At the time of defendant's arrest, his 30.06 rifle was found in his pickup truck. He has no memory of what happened after Smith broke up the fight.

After his conviction, defendant was designated a non-dangerous offender for purposes of parole and given credit for the ten months he had spent in the Choteau County jail awaiting trial. Further, he was permitted to serve the remainder of his sentence in the Choteau County jail rather than the Montana State Prison. He is now free on $2500 bail pending this appeal of his conviction and sentence.

The first issue presented on appeal is whether the District Court erred in refusing to instruct the jury that the burden is on the State of Montana to prove beyond a reasonable doubt that defendant Zampich acted purposely, knowingly and voluntarily?

3

At trial defendant contended that, due to various circumstances at the time of the offense, including intense head, neck and back pain, humiliation, anger, mistreatment, fear, and the assault by Cline who had threatened to put him six feet under, he did not know what he was doing and was not able to control himself. Specifically, Zampich claimed that if he shot Ray Cline, it was not a voluntary act.

That defense was supported by the testimony of Dr. J. Earl Farris, a psychologist who examined and tested Ken Zampich in October, 1981 and again in February, 1982. Dr. Farris testified that defendant's conduct, head injuries and emotional state support the theory that even though he might have been able to act in a directed way and with perception (purposely and knowingly), defendant may not have been acting with "moral control" (voluntarily). That is, he might have been acting with cognition and without volition. Since evidence was presented that he might have been acting without volition, defendant argues that the jury should have been instructed regarding both cognitive and volitional behavior.

Defense counsel submitted several proposed instructions concerning the concept that Zampich was not capable of acting purposely, knowingly and voluntarily. For example, defendant's proposed instruction No. 43 (setting out the theory of the defense) stated:

> "Under this Theory, the Defense contends that he did not act purposely or knowingly or voluntarily and was not capable of acting purposely or knowingly or voluntarily. The burden is on the State of Montana to prove beyond a reasonable doubt to a moral certainty that Kenneth Norman Zampich acted purposely, knowingly, and voluntarily and was capable of acting purposely, knowingly and voluntarily."

The trial court gave essentially the same instruction, after deleting every use of the word "voluntarily".

4

However, Instruction No. 6, as given by the trial court, stated: "A material element of every offense is a voluntary act." Section 45-2-202, MCA. That instruction properly called the jury's attention to the psychological evidence defense counsel had marshalled. Instructions No. 2 and No. 5 stated that the State of Montana has the burden to prove each element of the crime beyond a reasonable doubt. Reading all the instructions together, as is required by this Court, it is clear the jury was properly instructed regarding defendant's theory of the case. Cf. State v. Riley (1982), ___ Mont. ___, 649 P.2d 1273, 39 St.Rep 1491; State v. Johnson (1982), ___ Mont. ___, 646 P.2d 507, 39 St.Rep. 1014; State v. McKenzie (1980), ___ Mont. ___, 608 P.2d 428, 37 St.Rep. 325, certiorari denied 449 U.S. 1050, 101 S.Ct. 626, 66 L.Ed.2d 507; State v. Azure (1979), 181 Mont. 47, 591 P.2d 1125.

The second issue before this Court is: Did the District Court err in failing to apply exceptions found in section 46-18-222(2) and (3), MCA, to the mandatory two year minimum sentence for mitigated deliberate homicide and in failing to follow the procedures set forth in section 46-18-223, MCA?

Section 46-18-222(2) and (3), MCA state:

"Exceptions to mandatory minimum sentences and restrictions on deferred imposition and suspended execution of sentence. All mandatory minimum sentences prescribed by the laws of this state. . . do not apply if:

(1) . . .

(2) the defendant's mental capacity, at the time of the commission of the offense for which he is to be sentenced, was significantly impaired, although not so impaired as to constitute a defense to the prosecution;

(3) the defendant, at the time of the commission of the offense for which he is to be sentenced, was acting under unusual and substantial duress, although not such duress as would constitute a defense to the prosecution."

5

Defense counsel requested, at a hearing prior to sentencing, that section 46-18-222(2) and (3) be applied to defendant and that the two year minimum sentence for mitigated deliberate homicide not be imposed.

The trial judge applied section 46-18-222(2), MCA, to defendant but sentenced defendant to more than the mandatory minimum sentence for mitigated deliberate homicide. We find no error.

The trial judge gave great consideration to defendant's situation prior to imposing the sentence. The sentencing order contains specific reasons for the sentence imposed. The procedures of section 46-18-223, MCA, have been substantially followed. We would be "splitting hairs" to overturn the sentence in this case because the trial judge did not make a specific finding stating that "section 46-18-222, MCA, should not apply because . . ."

Defendant's conviction and sentence are affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices