No. 84-306

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

ALLEN DALE McHUGH,

Defendant and Appellant.

---

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis & Clark,
In Honorable Gordon Bennett, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Cannon & Sheehy; Edmund F. Sheehy, Jr., Helena,
Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Mike McGrath, County Attorney, Helena, Montana

---

Submitted on Briefs: Oct. 18, 1984

Decided: March 26, 1985

Filed: MAR 2 1985

*Ethel M. Harrison*

---

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Defendant Allen Dale McHugh was convicted in a jury trial in Lewis and Clark County District Court of issuing bad checks, common scheme, a felony. McHugh was sentenced to five years at the Montana State Prison with three years suspended subject to certain conditions. McHugh appeals his conviction. We affirm.

The issues are:

1. Is the evidence sufficient to support the jury's verdict that defendant engaged in a common scheme of issuing bad checks?

2. Did the District Court err in denying defendant's motion to dismiss at the close of the State's case?

3. Did the District Court err in refusing defendant's proposed instructions no. 16 and 17?

McHugh was charged by information filed November 30, 1983 with issuing bad checks, common scheme, a felony. At trial, the State introduced seventeen bad checks written on two separate Helena checking accounts. The record shows that at least ten of the seventeen checks remained unpaid at the time of trial.

Representatives of five Helena merchants testified regarding ten NSF checks received from McHugh. Each of these merchants sent certified letters to McHugh notifying him that the checks had bounced and advising him that if full payment was not received within a certain number of days, the checks would be turned over to the county attorney. Delivery receipts from each of these certified letters were returned to the individual merchants signed either by McHugh personally or by his friend, Murray Vickers, who lived with McHugh. Vickers signed for some of the letters and left them where McHugh customarily picked up his mail. Vickers testified

- 2 -

that McHugh would have seen the letters Vickers signed for. Despite having received these certified letters, McHugh contacted none of these merchants. These ten checks remained unpaid at the time of trial. The State introduced, through McHugh's own testimony, seven additional checks written to local merchants by McHugh which were returned marked NSF or account closed.

Representatives of each of McHugh's two banks also testified. The State introduced monthly account statements sent to McHugh by the banks during the period covered by the information. These statements show that McHugh maintained a significant negative balance in both accounts for substantial periods of time. The bank representatives testified that overdraft notices were sent to McHugh for each day the accounts became overdrawn. In one statement period no deposits were made by McHugh to his First Security Bank account despite a negative opening balance of $401.14. Further, bank representatives testified that these statements did not show the total amount of checks written that were dishonored by the bank. The statements showed only actual charges against the accounts. One of the bank representatives testified that he found it very hard to believe that someone would not know under these circumstances he had insufficient funds to cover the checks. This witness noted that the bank statements instructed account holders to bring to the bank's attention any discrepancies or questions regarding the account. There is no indication in the record that McHugh ever contacted either bank to discuss questions or discrepancies in his accounts.

McHugh attempted to show at trial that he did not or could not have had knowledge that his checks would not be honored by the banks. McHugh attempted to show that bank

charges assessed on each overdraft accounted for his negative balance and that deposits made by McHugh would have been sufficient to cover the actual checks written by McHugh. Bank representatives testified to the contrary.

McHugh also attempted to show that an officer at Valley Bank had agreed to cover his checks until McHugh received an anticipated $4,000 check in settlement of an insurance claim. This bank officer testified that he had discussed the matter with McHugh, but that he told McHugh he would not cover the checks until McHugh received the check and deposited it in his account.

McHugh himself testified at trial, characterizing himself as "dumber than they come" regarding checkbook balances. He testified that if he would have known about the bad checks he would have made them good. He testified that he either simply lost track of checks he had written or believed the bank would cover the checks despite his negative balance.

I

Is the evidence sufficient to support the jury's verdict that defendant engaged in a common scheme of issuing bad checks?

Defendant argues that the evidence is insufficient to justify a jury verdict that he is guilty of engaging in a common scheme. He argues that each check written was an individual and complete act, each being too distant in time to constitute a continuing criminal design.

McHugh was charged with issuing bad checks under § 45-6-316, MCA. That section provides:

"(1)  A person commits the offense of issuing a bad check when, with the purpose of obtaining control over property or to secure property, labor, or services of another, he issues or delivers a check or other order upon a real or fictitious depository for the payment of money knowing that it will not be paid by the depository.

- 4 -

". . .

"(3)   A person convicted of issuing a bad check shall be fined not to exceed $500 or be imprisoned in the county jail for any term not to exceed six months, or both.   If the offender has engaged in issuing bad checks which are a part of a common scheme  . . .  he shall be fined not to exceed $50,000 or be imprisoned in the state prison for any term not to exceed ten years, or both."

"Common scheme" is defined in § 45-2-101(7), MCA as "a series of acts or omissions motivated by a purpose to accomplish a single criminal objective or by a common purpose or plan which results in the repeated commission of the same offense or affects the same person or the same persons or the property thereof." This statutory definition was included in the court's instruction to the jury concerning common scheme. Pursuant to this Court's holding in State v. Renz (Mont. 1981), 628 P.2d 644, 645-46, 38 St.Rep. 720, 722-23, the jury was further instructed that acts alleged to be a common scheme must be either individually incomplete such that they show a single crime had been committed or has been committed or that they must be acts which closely follow one another, evidencing a continuing criminal design.

The test applied by this Court to determine whether the evidence is sufficient to support the verdict is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Rodriguez (Mont. 1981), 628 P.2d 280, 283, 38 St.Rep. 578F, 578I, citing Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573. We conclude the evidence is sufficient to support the jury's verdict that McHugh engaged in a common scheme of issuing bad checks.

The evidence in the record justifies a rational trier of fact in finding the essential elements of the charged offense

- 5 -

beyond a reasonable doubt. The record shows that the defendant issued or delivered checks to numerous Helena merchants with the purpose of securing their property, labor or services. The evidence establishes circumstances which would allow a rational trier of fact to believe that McHugh could not have expected the banks to honor his checks. The evidence overwhelmingly supports a finding that McHugh repeatedly issued checks to local merchants without sufficient funds on deposit to cover those checks. Despite receiving bank statements, overdraft notices and certified letters indicating that his checks were not being honored by his banks, McHugh continued to engage in precisely the same conduct, resulting in a repeated commission of the same offense. The evidence in the record supports a finding that the issuance of each check closely followed issuance of another, evidencing a continuing criminal design.

McHugh nonetheless argues that the bad checks he issued did not closely follow one another because some of the checks were issued in April and May of 1983 and others were issued in the fall of 1983. However, the record shows that a number of bad checks relied upon by the State were issued on First Security Bank in a short period within the months of April and May of 1983, and that another group of checks was issued on Valley Bank within a short period of time in the fall of 1983. We conclude that issuance of each check followed issuance of the others closely enough to constitute a continuing criminal design.

McHugh further argues that he did not engage in a continuing criminal design because the bank paid some of the checks he issued and dishonored other checks. He argues that the banks could have decided to pay all of his checks rather than bouncing some and paying some. McHugh also notes that

his wife was writing checks on the two bank accounts and that she was not charged with issuing bad checks. We find no merit in these arguments. As stated in defendant's brief, the evidence shows that the defendant himself issued numerous bad checks which were not made good by him, and the property obtained thereby was not paid for.

McHugh argues that it is "particularly repugnant" to convict him of this crime when the unpaid checks in question totalled less than $400. The State, however, is not required to establish any particular amount where, as here, a common scheme is established. Section 45-6-316(3), MCA.

We hold that the evidence is sufficient to support the jury's verdict that defendant engaged in a common scheme of issuing bad checks.

## II

Did the District Court err in denying defendant's motion to dismiss at the close of the State's case?

McHugh argues that the court erred in not dismissing the charges after presentation of the State's case because the State had made no prima facie showing of knowledge as required by § 45-6-316(1), MCA. In this regard, McHugh contends he had enough money on deposit to cover the checks written but not to cover the bank's service charges. He argues that the charges against him are merely the result of arbitrary bank actions in covering some checks but not covering others. He further argues that he should not be convicted of the crime when the bank promised to cover his checks.

A directed verdict of acquittal is appropriate in a criminal case only where the State fails to prove its case and there is no evidence upon which a jury could base its verdict. The decision whether to dismiss the charge or direct a verdict of acquittal lies within the sound

discretion of the trial court and will not be disturbed on appeal, absent a showing of an abuse of discretion. State v. Goltz (1982), 197 Mont. 361, 372, 642 P.2d 1079, 1085.

A person acts knowingly with respect to the result of conduct when he is aware that it is highly probable that a result will be caused by his conduct. Section 45-2-101(33), MCA. Here, extensive evidence introduced during the State's case-in-chief tended to show that McHugh knew that it was highly probable that the checks he was issuing would not be honored. This evidence included bank statements showing significant negative balances, numerous overdraft notices mailed to the defendant, and numerous certified letters sent to McHugh notifying him of the overdrafts and requesting payment. Numerous checks remained unpaid at the time of trial. The State's case-in-chief contains sufficient evidence upon which the jury could base its verdict.

McHugh's contention that the overdrafts were caused by bank charges rather than a lack of sufficient deposits was directly refuted by the testimony of bank representatives. Moreover, the record contains ample evidence to justify the jury's rejection of McHugh's argument that because the bank honored some of his checks McHugh could not have known the bank would dishonor other checks. The evidence supports a finding that under the circumstances McHugh was aware that it was highly probable that his checks would not be paid by the banks.

We hold that the District Court properly refused to dismiss the charges at the close of the State's case.

III

Did the District Court err in refusing defendant's proposed instructions no. 16 and 17?

McHugh argues that the District Court erred in refusing his proposed jury instructions no. 16 and 17. McHugh's proposed instruction no. 16 would have in effect required that the jury find he had actual knowledge that his checks would not be honored. McHugh's proposed instruction no. 17 would have provided McHugh a defense if the jury found that McHugh had such credit with the bank as to lead him to a reasonable belief that his checks would be honored, and would allow proof of such a belief by showing an implied understanding by McHugh from his past course of dealing with the bank and the bank's past conduct. Both proposed instructions were derived from states, unlike Montana, where criminal liability for issuing bad checks depends on an intention to defraud. We conclude that the District Court properly refused the instructions.

Section 45-6-316(1), MCA does not require actual knowledge that the checks will not be paid by the bank. This section requires only that the defendant act "knowing that [the check] will not be paid by the depository." The definition of "knowingly" and the equivalent term "knowing" is stated in section 46-2-101(33), MCA. This definition was presented to the jury in Instruction no. 9. That instruction informed the jury that "[w]here, as here, knowledge of the existence of a particular fact is an element of an offense, such knowledge of the fact is established if a person is aware of a high probability of its existence." This instruction, which was given to the jury, properly states Montana law with respect to the knowledge requirement.

If the instructions, reviewed as a whole, fully and fairly present the law to the jury, the jury has been properly instructed. State v. Zampich (Mont. 1983), 667 P.2d 955, 957, 40 St.Rep. 1235, 1237; State v. Johnson (Mont. 1982),

646 P.2d 507, 512, 39 St.Rep. 1014, 1020. Here the jury was fully and fairly instructed with regard to the knowledge requirement of § 45-6-316, MCA.

Under the knowledge instruction given by the court, McHugh had ample opportunity to present evidence and argue that he was not aware of a high probability that his checks would be dishonored, either because he had an agreement with the bank to honor the checks or because his prior dealings with the bank and the bank's past conduct led him to reasonably believe his checks would be honored. The jury rejected these arguments.

We hold that the District Court properly refused defendant's proposed jury instructions no. 16 and 17.

We affirm the defendant's conviction.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices