No. 97-575

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 232N

STATE OF MONTANA,

Plaintiff and Respondent,

v.

STEVEN L. MCNEIL,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable William Nels Swandal, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

John Keith, Great Falls, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, C. Mark Fowler, Assistant Attorney General, Helena, Montana; Marty Lambert, Gallatin County Attorney, Bozeman, Montana

Submitted on Briefs: July 29, 1998

No

Decided: September 17, 1998

Filed:

_____ Clerk

Justice William E. Hunt delivered the Opinion of the Court.

**¶ Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.**

**¶ This is an appeal by Steven L. McNeil (McNeil) from the judgment of conviction entered by the Eighteenth Judicial District Court, Gallatin County, upon a jury verdict finding him guilty of issuing a bad check, a felony, in violation of § 45-6-316, MCA. McNeil contends that the District Court erred when it denied his motion to dismiss, his motion for a directed verdict, and his motion to set aside the verdict. We affirm.**

**¶ In October, 1995, McNeil was convicted of various traffic offenses, and Presiding Judge Thomas A. Olson sentenced him to pay $1,287 in court fines within 60 days of October 31, 1995. On approximately December 28, 1995, McNeil sent Judge Olson a document entitled "Certified Bankers [sic] Check - Comptroller Warrant." The document was written for the amount of $2,574 and constitutes the bad check for**

which McNeil was convicted of writing. The check was made out to both McNeil and Judge Olson, and McNeil had endorsed the back of it. The name appearing on the signature line of the check was LeRoy M. Schweitzer. It stated in one place that Schweitzer was the "accommodation/surety/guarantor," and in another place that Schweitzer was the "Drawer/Maker." It also stated that the check was "Redeemable at office of PostMaster [sic], Payable on Sight."

¶ Accompanying that check was another document entitled "Praecipe," which instructed Judge Olson to pay the court fines and return the balance to McNeil, who was referred to as "the State in Fact," within 72 hours. In that same "Praecipe," McNeil claimed that he was the "Sovereign" and that he resided in "Belgrade, Montana Republic state, united [sic] States of America" which was "expressly not 'within' the United States." McNeil signed the "Praecipe."

¶ Judge Olson presented the check to Valley Bank of Belgrade, which refused to honor it. Similarly, the postal service could not redeem the check because it was not a postal document or federal money order, because it was a two-party check, and because a December 7, 1995 postal bulletin called a "fraud alert," instructed postal employees not to cash such checks.

¶ On February 8, 1996, the prosecution filed an information charging McNeil with issuing a bad check, a felony, in violation of § 45-6-316, MCA. The affidavit filed in support of the information detailed the State's case against McNeil and includes a copy of the check McNeil mailed to Judge Olson, a copy of the "Praecipe," and a copy of the "fraud alert" issued by the postal service. The alert warns postal service employees not to accept checks for payment that are similar to the one at issue in this case. The sample check attached to the alert similarly contain the statement "Redeemable at office of PostMaster [sic], Payable on Sight," and is signed by LeRoy M. Schweitzer.

¶ McNeil was convicted of violating § 45-6-316, MCA, which provides:

> **Issuing a bad check.** (1) A person commits the offense of issuing a bad check when the person issues or delivers a check or other order upon a real or fictitious depository for the payment of money knowing that it will not be paid by the depository.

(3) A person convicted of issuing a bad check shall be fined not to exceed $500 or be imprisoned in the county jail for any term not to exceed 6 months, or both. If the offender has engaged in issuing bad checks that are part of a common scheme or if the value of any property, labor, or services obtained or attempted to be obtained exceeds $500, the offender shall be fined not to exceed $50,000 or be imprisoned in the state prison for any term not to exceed 10 years, or both.

¶ **On appeal, McNeil argues that the state failed to prove the elements necessary to convict him of violating § 45-6-316, MCA. Specifically, he contends that the court erred in denying his motions to dismiss, for a directed verdict, and to set aside the verdict, because the information charging him with issuing a bad check was insufficient. He additionally contends that no evidence supported the jury's verdict that the document he sent to Judge Olson was a check or order drawn on a bank; that he received "property, labor or services" by issuing the check, or that he knew the check would not be paid. Because many of his arguments with regard to the sufficiency of the information and the sufficiency of the evidence at trial overlap, we consider both at the same time.**

A. <u>Check or Other Order</u>

¶ **The Uniform Commercial Code (U.C.C.) defines a "negotiable instrument" as follows:**

(1) "Negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:

(a) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;

(b) is payable on demand or at a definite time; and

(c) does not state any other undertaking or instruction by the person promising

or ordering payment to do any act in addition to the payment of money except that the promise or order may contain [other undertakings, authorizations, or waivers not relevant to this case].

Section 30-3-104(1), MCA. A "check" means "a draft, other than a documentary draft, payable on demand and drawn on a bank[.]" Section 30-3-104(6), MCA. An "order" is also considered to be a negotiable instrument and a check if it otherwise falls within the definition of a "check" and if it meets all the requirements of a "negotiable instrument" except those falling within subsection 1(a). Section 30-3-104(3), MCA.

¶ **McNeil contends that the document he mailed to Judge Olson does not constitute a "check" or "other order" within the meaning of § 45-6-316 and § 30-3-104, MCA, for three reasons. First, he argues that the document was not "drawn on a bank" as required by the definition of "check" in § 30-3-104(6), MCA. He provides no analysis or legal authority for his position, but merely states that the "document in this matter is clearly not drawn upon a bank." His position lacks merit.**

¶ **A "bank" means "any person engaged in the business of banking. . . ." Section 30-4-105(1), MCA. The bank upon which the check is drawn and by which it is payable is the "payor bank." Section 30-4-105(3), MCA. The first bank to which a check is submitted for collection is the "depository bank" regardless of whether it is also the payor bank. Section 30-4-105(2), MCA.**

¶ **In this case, the instrument identifies the depository bank as "Treasurer united [sic] States of America" and "PostMaster [sic]." It further states that the check is redeemable at the "office of PostMaster [sic]" and is "Payable on Sight." Thus, "Treasurer united [sic] States of America, office of PostMaster [sic]" is both the payor bank and the depository bank. The fact that the entity identified as the payor bank or the depository bank is fictitious or has no authority to make the payment does not exculpate McNeil. The very statute for which McNeil was convicted of violating provides that a person commits the offense of issuing a bad check if the check is delivered "upon a real or fictitious depository." Section 45-6-316(1), MCA. Here, the "Treasurer united [sic] States of America, office of PostMaster [sic]" is a fictitious depository.**

¶ **Second, McNeil contends that the instrument is not a "check" or "order" because it is not an order to pay. He points to the definition of "order" set forth at § 30-3-102**

(f), MCA, which provides in part that "[a]n authorization to pay is not an order unless the person authorized to pay is also instructed to pay." He maintains that the check he sent to Judge Olson merely authorizes payment but that "no language on the document . . . can be construed as an order to pay." We disagree.

¶ The check contains an unconditional promise or order to pay $2,574. It specifically says "pay to" the bearer, which in this case was Judge Olson. The words "pay to" is an order or instruction, not merely an authorization, to the depository bank to pay $2,574. Additionally, the check instructs that the amount is to be paid "on Sight." Finally, although the front of the check identifies Judge Olson and McNeil as co-payees, McNeil endorsed the back of the check, ordering Judge Olson to be paid. We thus conclude that the check contains an order or instruction to pay Judge Olson.

¶ McNeil next contends that the document was signed by LeRoy M. Schweitzer as an accommodation party. He cites § 30-3-415, MCA, and argues that Schweitzer was not a direct beneficiary of the check. He concludes that the obligation to pay the instrument rests with Schweitzer, not a bank or depository, and that therefore the document does not constitute a check. Again, we disagree.

¶ The fact that Schweitzer is identified on the check as an accommodation party is immaterial. Pursuant to § 30-3-415, MCA, an accommodation party may also sign the instrument as a maker or drawer, which is precisely what the check purports to do in this case. Indeed, the check itself states that Schweitzer is the "Drawer/Maker." However, the check also identifies the depository to be "Treasurer united [sic] States of America; Redeemable at office of PostMaster [sic]," and states that it is "Payable on Sight." McNeil cites no authority and provides no analysis that supports his contention that the payor bank or depository bank is discharged from the obligation of paying the check merely because an accommodation party has signed the check. We conclude that the document constitutes a "check or other order" within the meaning of § 45-6-316, MCA.

B. Drawn Upon a Real or Fictitious Depository

¶ McNeil next argues that the information is insufficient to charge an offense, because the check was not drawn upon a "real or fictitious depository" as provided for in § 45-6-316, MCA. He contends that the relevant question before this Court is "whether the instrument was drawn 'upon' the depository." He argues that it was

not, because the check expressly states it is an accommodation document. Again, McNeil's position lacks merit.

¶ The face of McNeil's check states that it is a "Certified Bankers [sic] Check." As we have previously elaborated, regardless of the fact that Schweitzer is identified as being the "accommodation/surety/guarantor" and "Drawer/Maker," the check also identifies the payor bank or depository bank to be "Treasurer united [sic] States of America, Redeemable at office of PostMaster [sic]" and further states that the check is "Payable on Sight." It matters not that the drawer bank is not real. Section 45-6-316, MCA, specifically makes it a crime to draw a check upon a "fictitious depository."

## C. Property, Labor or Services

¶ McNeil also maintains that the information is insufficient to charge him with a felony because there was no probable cause for finding that he gave the check in exchange for "property, labor, or services" whose value exceeded $500, as provided for in § 45-6-316(3), MCA. He also argues that at trial, the prosecution produced no evidence upon which the jury could find that he received "property, labor or services" as required by the statute.

¶ McNeil misconstrues the statute. A person commits a felony "if the value of any property, labor, or services obtained or *attempted to be obtained* exceeds $500. . . ." Section 45-6-316(3), MCA (emphasis added). There is no requirement that he actually receive the property. In this case, McNeil attempted to obtain the cash value of $1,287 to satisfy a debt for traffic violations, and the balance of $1,287 in cash from Judge Olson, for a total of $2,574. This obviously constitutes property in excess of $500.

## D. Knowing that the Check or Order Will Not Be Paid by the Depository

¶ Lastly, McNeil argues that the allegations in the information are insufficient to establish a finding that McNeil knew the check would not be paid. He also argues that at trial the prosecution presented no evidence from which the jury could infer that he knew the instrument would not be paid. Again, we reject his contention.

¶ Section 45-6-316(1), MCA, does not require the prosecution to prove that McNeil

had actual knowledge that the check would not be paid by the depository. According to the definition of "knowing" provided for in § 45-2-101 (34), MCA, the prosecution only had to prove that McNeil was "aware that it [was] highly probable" that the depository would not pay the check. <u>See</u> <u>also</u> State v. McHugh (1985), 215 Mont. 296, 303, 697 P.2d 466, 471.

¶ In this case, the face of the check itself as well as the "Praecipe" constitute sufficient evidence by which a rational jury could find that McNeil knew or was aware that it was highly probable that his check would not be paid by the "Treasurer united [sic] States of America" or the "PostMaster [sic]." First, the check is entitled "Certified Bankers [sic] Check - Comptroller Warrant," but the check fails to identify either a specific bank or a comptroller. Doug Tillet, President of Valley Bank of Belgrade, testified that no bank could be used as the payor bank. Tillet also testified that there is no such thing as a certified banker's check. Because no bank or comptroller is identified as the depository bank, and because there is no such thing as a certified banker's check, a rational jury could conclude that the check falsely identifies the federal treasurer as being an entity engaged in the business of maintaining financial accounts for citizens for payment on demand. A rational jury could conclude that McNeil was highly aware that the federal treasurer did not actually engage in such a business.

¶ The check also contains an account number and a lien number, falsely indicating that the postal service keeps accounts for individuals or that a lien could be a direct source of funding. Additionally, a postal service employee testified that the post office does not accept two-party checks. Any one of these factors would raise suspicions in a reasonable person. Again, this constitutes evidence by which a rational jury could conclude that McNeil was highly aware that the postal service would not honor the check.

¶ Finally, the face of the check alone contains irregular capitalizations, such as in "united" and "PostMaster," and "Bankers" is missing an apostrophe. Again, these factors would raise suspicions in a reasonable person and constitute evidence by which the jury could reasonably find that McNeil was highly aware that the check would not be paid.

¶ In addition to the check itself, the "Praecipe," which was delivered to Judge Olson with the check, evidences McNeil's knowledge. The "Praecipe" distinguishes between

**various governmental entities: the "United States," which McNeil claims that he and the town of Belgrade, Montana are not "within," and the "Montana Republic state [sic]," "country of Montana," and "united [sic] States of America," where McNeil is the "Sovereign" or the "State in Fact." This constitutes evidence that McNeil fabricated various entities, and a jury could rationally find that McNeil also knew his fabricated "Treasurer" and "PostMaster" would not honor his check.**

**¶ In sum, contrary to McNeil's assertion, the information, which is accompanied by an affidavit, a copy of the check, the "Praecipe," and the postal service fraud alert, states probable cause to believe that an offense was committed. It thus meets the requirements of § 46-11-201(2), MCA. We hold that the information was sufficient to charge McNeil with violating § 45-6-316, MCA.**

**¶ We also conclude that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. We hold that there was sufficient evidence to support the jury's verdict.**

**¶ Affirmed.**

/S/ WILLIAM E. HUNT, SR.

We Concur:


/S/ J. A. TURNAGE

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ KARLA M. GRAY